UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>CUMBERLAND INVESTMENT CORP.,<br><br>Debtor | BK No. 89-11051<br><br>Providence, Rhode Island<br>May 7, 2008 |

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE ARTHUR N. VOTOLATO
UNITED STATES BANKRUPTCY JUDGE

A P P E A R A N C E S :

| | |
|---|---|
| For the Debtor: | **HAROLD F. CHORNEY**<br>16 Spring Drive<br>Johnston, Rhode Island 02919 |
| For the Chapter 7 Trustee: | **JASON D. MONZACK, ESQ.**<br>888 Reservoir Avenue<br>Cranston, Rhode Island 02910 |
| For the U.S. Trustee: | **GARY L. DONAHUE, ESQ.**<br>Office of the U.S. Trustee<br>10 Dorrance Street<br>Providence, Rhode Island 02903 |
| For Edwards, Angell, Palmer & Dodge: | **EDWARD J. BERTOZZI, JR., ESQ.**<br>Edwards, Angell, Palmer & Dodge<br>2800 Financial Plaza<br>Providence, Rhode Island 02903 |
| Transcription Service: | Elite Transcription<br>(479) 872-2639<br><br>Email: Elite-Transcription@cox.net |

INDEX

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
| --- | --- | --- | --- | --- |
| No Witnesses | | | | |

| EXHIBITS | DESCRIPTION | MARKED | RECEIVED |
| --- | --- | --- | --- |
| No documents | | | |

THE COURT: -- involves Cumberland Investment Corporation, a number of matters that were started for hearing, and I guess back in March, March 27, and continued to today. There were fee applications, objections, responses by the U.S. Trustee, a motion by Harold Chorney to clarify the fee application of Edwards & Angell, a response to that by E&A, and a supplemental response by the trustee, and then supplements by Chorney, to the motion to clarify, and a supplement by Chorney regarding the issue of standing. We have responses to that by Edwards & Angell and the U.S. Trustee.

I'm going to take hopefully a couple of minutes before we start that. And we won't take a recess; we'll just use up the time. Relax in the meantime.

(Pause in proceedings)

THE COURT: Okay, we're ready to go ahead on the various applications and pending matters. I think the way I would plan to go ahead would be to -- we have the papers filed by Mr. Chorney, they're extensive. I'm going to hear the responses first, to Mr. Chorney's positions this morning, and then to the extent that they're appropriate I'm going to hear Mr. Chorney, in response to what we hear from the objectors. Okay? Yes, Mr. Monzack.

MR. MONZACK: If Your Honor please, Jason Monzack, the Chapter 7 Trustee. In response to Mr. Chorney's filings with the Court I have submitted three separate submissions to the

Court. And if I may summarize what's in those three submissions, generally. My purpose in submitting those documents to the Court was to show, through Mr. Chorney's own language in matters that he submitted to this Court, to a matter pending in the 1st Circuit as we stand and sit here today, in a matter that was disposed by the 1st Circuit in 2002, in an order from the 1st Circuit in 1993, in a proof of claim that summarizes Mr. Chorney's conduct from 1984 to 1990, so it spans a period of time from 1984 to 2007, that other than the very narrow issue of Mr. Bertozzi's fee, there are other issues that Mr. Chorney is seeking to raise and all of those issues have been raised numerous times before this Court and appellate courts and have been disposed of by this Court and appellate courts, due to both a lack of standing of Mr. Chorney and the barring effect of final orders and judgments of numerous courts.

I have submitted a copy of a nonpublished 1st Circuit decision of 1993 with my most recent submission that gives a history of the case through 1993. And in 1993 it talks about the number of submissions and appeals and docket entries pending in this Court. And from 1993 to today there are -- the number of docket entries now in this case exceeds 1,000. At that point I think it was about 300. Some of the language used by this Court and other courts to describe Mr. Chorney's behavior and his allegations are, "totally unsupportable," "fabricated," "out of touch with reality," "frivolous," "bad faith,"

"obstructionist," "ludicrous," "incomprehensible." And Mr. Chorney continues to file, as he has in this case, pleadings seeking to raise issues that have been many times considered and disposed of by this Court and other courts.

With regard to -- I'll just say this, that I think Mr. Chorney's intent can be seen from his most recent submission to this Court in which he says for apparently the first time since this case began, and in my memo I point out in the 18 1/2 years that this case has been pending, and some 14 years since Mr. Chorney received this transcript of the removal of assets by the Chapter 11 Trustee, Mr. Chorney is now apparently saying that some of these assets were personal assets and not corporate assets, which I maintain shows the implicit recognition by Mr. Chorney that he has no standing and that all of these issues that he has sought to raise have been disposed of on prior occasions.

He's now coming up with what apparently is a new theory, that he has standing, and he's raising new issues because he's now claiming that some of these assets were personal property, which he acknowledges in his pleading that he's raised these issues many times in his so-called corporate capacity, but now apparently he's raising these in his personal capacity.

I believe that the submissions that I've made to the Court, the copies of prior orders of this and appellate courts

that have been submitted, the summaries of the submissions that Mr. Chorney has made to this Court and to the appellate courts from the early 1990s until 2007 show that he repeatedly raises the same issues over and over again, that this Court should not consider these issues that he's raising at this time because of the prior effect of orders from this and other courts.

And on the one narrow issue of Mr. Bertozzi's fees and the appropriateness of his fees I don't disagree from the U.S. Trustee's position that it submitted to the Court which would accept that fee application, and the actual amount of fees being paid to Mr. Bertozzi is going to be significantly less than was contained in his fee application. He has not submitted all of his time to this Court and is not seeking compensation for all of his time. Whatever award is made to Mr. Bertozzi and his law firm will be greatly discounted because of the other expenses involved with this case, including my own expenses, Your Honor.

I would point out that since I submitted my last application, as a supplement to my final report, on December 17, '07, I have devoted an additional 46 hours to this case since that time, dealing almost entirely or most significantly with the submissions made by Mr. Chorney. So the Chapter 7 administrative expenses continue to escalate in this case.

And I believe that Mr. Chorney's motion, his many responses, should be denied by this Court or dismissed, based on the fact that the issues that Mr. Chorney seeks to raise, and if

you look behind the platform he uses, that is to object to Mr. Bertozzi's fees, the true intent of Mr. Chorney's pleadings appears to be to raise these issues over and over again. And therefore, I believe that, one, Mr. Chorney doesn't have standing, based upon the reasons submitted to this Court, by my submissions and by other parties' submissions, but on the merits of his pleadings they should be denied and dismissed because they've been disposed of previously, on numerous occasions.

THE COURT: Thank you.

MR. BERTOZZI: Your Honor, Edward Bertozzi, for Edwards, Angell, Palmer & Dodge. Your Honor, Mr. Monzack has eloquently set forth everything that I would say.

THE COURT: Okay. Thank you.

MR. DONAHUE: Good morning, Your Honor. Gary Donahue for the United States Trustee. As I see it, Your Honor, we're here on two distinct matters, the application for compensations of Edwards, Angell, Palmer & Dodge, and the most ironically styled pleading, Petitioner's Motion to Assist and Help the Court Concerning the First and Final Application for Fees and Expenses of Edwards, Angell, Palmer & Dodge, LLP.

Your Honor, I say that not to be flip, but the function today is to determine and liquidate the amount of the claim of Edwards, Angell, Palmer & Dodge, LLP. I have reviewed it on behalf of my client, the United States Trustee, Your Honor. We have no objection to the instant fee application. I

note that Mr. Bertozzi has exceptional skill and his integrity is beyond question in my personal opinion, Your Honor. I think the instant fee request is quite modest. As I've set forth it totals $45,953.75 for hours spent in the years 1990 and 1991. It implicitly waives $35,921 in fees because they can't reproduce the time records in detail, although they have a summary.

So effectively, Judge, based on the draft final report I have in my office, it looks like it's going to be 44.71 percent of whatever fees you allow. That, by my calculation, will pay Mr. Bertozzi's firm a grand total of $16,060, if you allow him the total of $45,953. Candidly, that's a very modest award. I know there are some specific objections raised in Mr. Chorney's papers. I think they're addressed in the response by Mr. Bertozzi. And simply stated, it's a very, very reasonable fee request, from my position. So I would think that the application should be approved.

The petitioner's motion to assist and help the Court, issue number one, does Mr. Chorney have standing; I believe he does not. Because whether or not you allow the fee application in total or deny it in total it will not affect his economic interest at all. However, we don't need to give Mr. Chorney another platform whether or not he has standing or not. I think you can consider it, I know other judges frequently do this in standing issues, consider it for what it's worth.

You should take it from whence it comes, Your Honor, attribute it to the weight of it, take it as an offer of proof, for its probative value, which I would suggest to you is little. It's not well presented and it perhaps would fall in the category of the other pleadings that the 1st Circuit and this Court have previously found to be obstructionist in nature.

Its stated purpose is to help and assist you in liquidating the fees of Edwards, Angell; you should consider it. And then you should award the appropriate fees and we should move forward. My office sent a detailed letter to Mr. Monzack on May 1st. There's still some little ticking and tying we want cleaned up on the TFR. He tells me he'll have the trustee's final report amended to me in a week. We'll be back again, I'm sure, with comments and objections, and hopefully we'll actually get some creditors paid some day. But once he gets that amendment to me, Judge, we'll take the next step. I'll be able to certify the final report to you and we'll have a final hearing on this case, which I don't think will be final. That might be an ironic name as well.

THE COURT: Do you have any position, I believe also on for hearing is the application of the Chapter 11 Trustee, John Cullen.

MR. DONAHUE: Your Honor, I did not review that prior to today's hearing. I did not appreciate that that was on calendar. That is my mistake.

THE COURT: Okay.

MR. DONAHUE: May I suggest that we put that on with the final hearing. The normal practice and my experience has been that all fee applications are considered at the time of the final hearing, especially since this -- even if you liquidate it or allow it today it's not going to be paid until the final report is approved. And that's why I'm saying it's estimated. And one of the things is -- you know there's a couple of dollars here or there need to be ticked and tied on interest earned, accrual of fees.

I gave you what I estimated -- if you approve the fee at 45 grand, I gave you an estimate that 16 grand will actually be paid, that's because I don't know the total yet, because Mr. Monzack is going to have a supplement, fees are going to continue to churn because of litigation in this case. So I would simply suggest -- I can't stand here and tell you I looked at it, I didn't. I didn't appreciate it. That's my mistake.

But I think it should be on for the final hearing and you should consider what was said and deny all the other relief in the motion to assist the Court, as quite frankly, under issue of preclusion, res judicata, collateral estoppel. I think you've heard this all before, but if there's something new in there that helps you in your deliberative process, by all means you should consider it.

THE COURT: Okay, thank you. Mr. Chorney. And

because, as you're fully aware, your opposition here has come down heavily on the notion that much of what you are trying to raise here is repetition of material that has been long ago heard, considered, disposed of, the Court also intends to keep a pretty tight reign on you as far as any attempts that I see to reopen stuff that even over your objection, and I recognize that you have objections to pretty much everything that happens in this court, I just want to forewarn you that I intend to keep a sharp eye, as sharp as I can keep it, on addressing the issues before us this morning, and you will not be allowed to kind of deviate from that. I can respectfully say that to you and hope that you can go along with that.

MR. CHORNEY: Thank you, Your Honor. Harold Chorney, representing himself, petitioner in this case. Your Honor has given responses to documents filed by Harold F. Chorney, as ordered by the Court on May 1, 2008, today between 10:00 and 10:15, and I'd like to give an uninterrupted, roughly five-minute response to the written material that comes from these gentlemen present here today.

In reviewing the various responses by the other parties petitioner finds, concerning the issue of standing, rather than standing on their own two feet and addressing the issue of the missing yellow inventory

notebooks and the Pre-Columbian gold frog amulets, which are of great value to me and personal assets of mine --

MR. DONAHUE: Objection, Your Honor. I understand that he has -- and I'm going to object because candidly that's not on for hearing today. He may request that he be uninterrupted; however, it's this Court's duty, responsibility, and authority, to control how and when it takes argument and/or evidence. And simply stated, Your Honor, I object to going there. We're here today on a fee application and I think we should focus on that.

MR. CHORNEY: Your Honor, it started off today where the trustee, Monzack, read his position of paperwork filed with you. I'm just responding to it. And I feel it's appropriate.

THE COURT: No, we're here this morning because the last time we were here you attempted to hand up information regarding Edwards & Angell's fee application --

MR. CHORNEY: That's exactly correct, Your Honor.

THE COURT: -- and John Cullen's fee application.

MR. CHORNEY: Right.

THE COURT: And I gave you permission, probably

unwittingly, but I did it, I told you to file whatever you had, with the Court, and you have. Partial response to that, by Edwards & Angell, was because of what they describe as a computer failure or malfunction; it couldn't recover the time entries for August 30 through December 22 -- well, August '90 through December 22, '93. And as a result of that, E&A waived its right to seek compensation for that period. As far as I'm concerned that takes that issue off the table, in the amount of $35,921.

You're next comparing Mr. Chorney's reconstructed records, where they conflict in 20 instances with the Edwards & Angell time records, showing that allegedly, and then let's take it that maybe your facts are not in dispute, where Mr. Cullen says he's with Edward Bertozzi and according to Edward Bertozzi's records he was doing something else. I believe that those conflicts, and I may have to defer or ask Mr. Bertozzi what his position is on this, do those alleged conflict dates, without resolving them one way or the other right now, cover the amount for the time period where you're waiving any claim for compensation. I'd say if you can't answer that question just tell me that.

MR. BERTOZZI: Your Honor, right, I'd have to go back and take a look. However, I believe that Mr. Cullen

was reconstructing his records, right?

THE COURT: Right.

MR. BERTOZZI: That was my understanding.

THE COURT: Yes.

MR. BERTOZZI: And the records that I did submit, for which I'm asking compensation, I did provide the itemized narrative descriptions, and I entered those descriptions pretty much on the day I did it or maybe the morning after, that kind of thing. You know it's been my practice over the years -- well, I remember when this whole practice started in this court, of requiring itemized narratives for each task done, and I think I would ask Your Honor to take judicial notice that over 30 years I have faithfully done my best to be accurate in my narrative entries.

And I don't remember Your Honor, I can't remember Your Honor ever finding fault or berating me for not doing it correctly in all this time. So what I would say is what's different now? In other words, what I'm saying is, Your Honor, Your Honor is familiar with my activities in this respect, in terms of keeping my time charges. And the fact that Mr. Cullen's time charge might not be exactly what I said -- or conform exactly to what I said I was doing on the day, well we'd have to ask Mr. Cullen. I did my best, and I believe I did, within

all reasonable bounds, enter my time correctly.

THE COURT: The quick question answer is, though, that you're not able to tell me that it wouldn't make any difference, because whatever discrepancies are alleged by Mr. Chorney, after he reviews Cullen's records, they don't all fall within the period of time that you're waiving compensation. You can say that this morning.

MR. BERTOZZI: That's correct, Your Honor. I'd have to go back and look.

THE COURT: Okay. Then that brings us back to, then, Mr. Donohue's and the Court's request. I'm not sure if I made the assumption that the John Cullen application was on for this morning. And you say that you weren't aware that it was, Mr. Donohue?

MR. DONAHUE: Your Honor, I simply rely on the calendar that's published on the Court's web page. Whether or not there was a specific notice given, I don't know. I went by that calendar, Judge.

THE COURT: Okay.

MR. DONAHUE: But I personally did not prepare it and I take responsibility for that.

THE COURT: Okay.

MR. DONAHUE: But I would simply suggest to you that we consider it when we consider the final report,

because I have a feeling there'll be a hearing.

THE COURT: Is there anything we can do to verify yes or no, whether it was on this morning's calendar and --

COURT CLERK: Yes, Judge.

(Pause in proceedings)

COURT CLERK: It is there. I could print it.

MR. DONAHUE: Okay. No, I accept that it's there, Your Honor. I just didn't see it there.

THE COURT: Okay. All right. In that case then, Mr. Cullen is not here. I don't know the reason for that. And as this case, consistently as it goes, I think becomes another impediment to putting everything -- or as much duress at rest as possible, as far as getting by these various issues.

So I think that we have no alternative but to follow Mr. Donohue's suggestion that Mr. Cullen's application be considered at the final hearing on applications and whatever else is left at that -- what did you call that hearing, Mr. Donohue?

MR. DONAHUE: I call it the final hearing. The hearing on the trustee's final report for purposed distribution, Your Honor.

THE COURT: Okay.

MR. CHORNEY: Your Honor, I'd still like to

respond to the pleadings that I received a little over an hour ago, that Your Honor requested from the parties present, and they've already testified in relationship to it.

THE COURT: Okay. But you're not going into artifacts and things that I don't see were properly raised when you asked for this time to submit these additional documents.

MR. CHORNEY: Your Honor, may I just be heard, and then if you want to strike it afterwards, I feel like there's continuity to an argument that I'm going to present to the Court.

THE COURT: Okay. And we're still -- that doesn't mean, though, that you can go wherever you like. Okay?

MR. CHORNEY: Your Honor, I received documents today, I've written out a response to it, and I'd like to give the Court that response.

THE COURT: Go ahead.

MR. CHORNEY: Thank you, sir.

And rather than addressing the yellow inventory notebooks and the Pre-Columbian gold frog amulets, and later -- which are of great value to me, and also clarifying the billing questions that I raise, the responses are riding piggyback on prior orders and

judgments of this Court, issued years ago. The validity of my current claims, as to the personal assets and billing questions, should not be prejudiced by continually citing those prior orders. Copies of the old notebooks have --

THE COURT: Why not, Mr. Chorney? Let me ask you, why shouldn't practically everything that you raise be affected by prior orders, which have covered I believe every possible issue that either was, could, or should have been raised. You can't just continuously think of new things as time goes by.

Now that happens to be the law, at least as I see it, and which is the law of this case that you may be stuck with, like it or not. So I interrupt you at that point to say why shouldn't the prior orders bind you, sooner or later? Much later obviously, we're still talking about it.

MR. CHORNEY: This prejudicial language involved with it, Your Honor, I feel like it's really unnecessary.

THE COURT: What language is unnecessary? And what's prejudicial?

MR. CHORNEY: Your Honor, may I continue to give the rest of this, and then if you want to get back to this item I'd be very glad to do it.

THE COURT: Well, it's kind of a simple

question. If the answer --

MR. CHORNEY: I feel I've answered you to the best of my ability, Your Honor.

THE COURT: I haven't heard it.

MR. CHORNEY: I have a condition where I don't want to get sidetracked from what I'm doing, and that's why I'm trying to get through this without being sidetracked.

THE COURT: And I guess the alternative is to sidetrack me, but we'll do it your way.

MR. CHORNEY: Well, just a five-minute deal, Your Honor, and then you can ask me whatever you would like. Okay?

Copies of the yellow notebooks have always been within the grasp of the trustee in this case. Thorne, Ernst & Whinney specifically stated that these records were the property of the trustee and they would not give them to the petitioner. Even though Mr. Cullen claims that he's never seen these yellow notebooks, somehow or other Thorne, Ernst & Whinney feel they're the property of the Chapter 11 Trustee in this case.

Attorney Bertozzi's response, not once but twice, makes an unnecessary sarcastic comment that Chorney attempts to, quote, "to harass and damage the court officers who were unfortunate enough to serve in

the case," unquote. I feel that such comments, just like the previous deal that Your Honor brought up, are uncalled for, especially in light of the fact that petitioner has produced for the Court an exhibit of this so-called missing billing, as Exhibit Number 3 to Petitioner's Motion to Assist and Help the Court Concerning the First and Final Application for Fees and Expenses of Edwards, Angell, Palmer & Dodge, LLP. I did produce that to the Court, Your Honor.

THE COURT: Do you understand, Mr. Chorney, why, in the face of the questions you raise, why the fact that Edwards & Angell has withdrawn any possible claim for compensation regarding that --

MR. CHORNEY: Yes, Your Honor, and I'm going to address that in just a little while.

THE COURT: A little while.

MR. CHORNEY: Yes, sir.

THE COURT: Okay, well you started out with a five-minute representation and I --

MR. CHORNEY: Well, I said in or about, but I got interrupted several times, Your Honor.

THE COURT: Okay. And you're getting credit for the Court's time interrupting you, plus other objections.

MR. CHORNEY: So I'm saying petitioner was not responsible for the loss of the yellow inventory

notebooks, in the handling of the estate. Petitioner was not responsible for the loss of the gold frogs and other personal items, in the handling of the estate.

The petitioner was not responsible for a glitch in transferring data to a new computer, resulting in non-pursuit of $35,921.36 in fees, for services rendered to the trustee. Petitioner was not responsible for the inability to recover data as to individual time entries.

THE COURT: Now you have it written down, so I don't feel guilty interrupting you. Why do you harp on this stuff when the claim for any of that -- for services is waived? Do you understand what the word irrelevant or moot means?

MR. CHORNEY: Well, somehow or other I feel like I'm being blamed for these actions over here and I'm just giving a position, Your Honor.

THE COURT: Okay.

MR. CHORNEY: Okay? You've had a written position from three other parties. I feel that it's only fair that I be able, in the eleventh hour --

THE COURT: Just cut it out now. Answer my question.

MR. CHORNEY: What's that, sir?

THE COURT: I asked you a question. When there's no claim pending, for this $35,000 that you

insist on talking about --

MR. CHORNEY: Right.

THE COURT: -- I'm finding that that's irrelevant and it's moot, because any claim is withdrawn. Would you acknowledge that that is a fact? Why do you want to keep talking about it if nobody is claiming any right to that $35,000?

MR. CHORNEY: I'm only addressing what's been given to me in paperwork, Your Honor. Okay? So if I address it, it's because other people have addressed it.

THE COURT: Go ahead. Finish up.

MR. CHORNEY: Incidentally, it's not without the realm of possibility, that missing billing data, such as the Monzack billing of May 15th, 1995, which is page 11 of his billing, and it's page E-161, would have given some clues as to the missing yellow notebooks, golden frogs, or even perhaps missing corporate coin collateral.

Only in the past few months, when newly discovered additional information as to the existence of additional videotapes and transcripts memorializing the transfer of estate assets contained in Mr. Cullen's billing of the 26th of October, 2007, on page 3, or page E-214, in the admission as to further coin discrepancies, the 61 coin discrepancy, as contained in the 9th October, of 2007, billing of Mr. Monzack, on page 25, which is

page E-175, the missing gold frogs, the persistence of missing yellow inventory notebooks, once more gave rise to possible negligence, in the handling of the estate. Then the billing glitches and the apparent discrepancies in billing further put light on possible mishandling of items belonging to me personally.

The petitioner also objects to Attorney Bertozzi citing Mr. Weingarten and remarking that my position as to the great value of the gold frog amulets is, quote, "an undoubtedly similar," unquote, gross overstatement as to value. That statement is gratuitous and prejudicial to the instant issues. Weingarten was no expert as to such items, and for the Court's information the majority of such Pre-Columbian items, today, reside in museums.

I want to thank the Court for the opportunity to speak, and ask that the Court grant my motions. And you can ask whatever questions you would like of me, Your Honor.

THE COURT: When you say you want the Court to grant your motions, what are you asking for?

MR. CHORNEY: Your Honor, originally when I objected, I didn't really object to Mr. Bertozzi's billing. I asked that it be clarified because there were sections there that I didn't understand. In the interim, Mr. Cullen put in his billing and they don't jibe, and I

gave like 20 examples of why they didn't jibe.

Then I researched my paperwork and I discovered that I have different billings from Mr. Cullen for the same time period, and also of Mr. Bertozzi, both of which were presented to this Court. And I feel like I'm trying to help and assist the Court, and myself at the same time, Your Honor.

THE COURT: Well, you were here earlier. Do you understand that Mr. Cullen's fee application will be scheduled for hearing at a later time?

MR. CHORNEY: Well, yes, Your Honor. I saw it like listed on today's docket sheet --

THE COURT: I understand that.

MR. CHORNEY: -- when I first came here, but not knowing the order of things for the Court, it just started off where the Court asked the parties present to comment on their paperwork that you had ordered them. And after receiving it, I felt like I should be heard on it because that's the last thought that's probably in your head concerning the issues that are before the Court.

THE COURT: Okay. Thank you.

MR. CHORNEY: Thank you, sir.

THE COURT: Any responses? And if not, I would say consistently and predictably, with prior hearings

over the last -- I think it's -- only because I haven't -- I don't count the years as they go by, but I understand there are about 18 of them that we've -- anniversaries we've had, of the date that this case was filed. The case has taken on a life of its own, as far as Mr. Chorney's exercise of what he considers is his rights to continue to disagree with the administration of the case, the handling of the case, the conduct of the professionals. I doubt that there's a single aspect of this case that Mr. Chorney has not disagreed with.

The appeal process has been worked, reworked, overworked. This morning's hearing is basically no different. It's an attempt to rehash things that either were, could, or should have been disposed of years ago, and all of Mr. Chorney's comments to the Court this morning are taken as such, and your objection to my reaction and my ruling, Mr. Chorney, is noted.

The application, unfortunately, by John Cullen, correctly, if your understanding was that it was on this morning, it was scheduled and apparently noticed, and as happens in this and other cases, some things somehow fall through the cracks. That doesn't mean it's fallen through the cracks to stay there. It will be scheduled again for a hearing on the application, which will also be heard at the same time as the trustee's final report.

You will be given notice and we will hear from you again I'm sure.

And again, the Court will be attempting to restrain you from straying beyond the boundaries of a fair examination of Mr. Cullen's report. But there's no water in this case that has not already gone over the dam. Everything that takes place at these repeated hearings, in this Court's view, is an attempt to rehash stuff that has been decided by this Court, ruled upon by appellate courts, and either remanded here, for further action, or terminated on the appeals. I'm not going to go into that. There's no way I could recall the docket entries in this case.

But the objections, I would say basically stated by Mr. Monzack in his opening, and as adopted by Mr. Bertozzi, are likewise adopted by this Court, and incorporated into this ruling. Your objections to everything that has happened, that you consider adverse, Mr. Chorney, those objections are noted. And this morning's proceedings are concluded. Especially, and beginning with the standing issue, I agree entirely with what the objectors to your position have stated regarding standing. It's been that way for a long time.

And the Court has I think probably excessively overindulged you on hearing you and allowing continued

filings to be made, that basically violate the Court's own intentions and rulings long ago. I guess that overindulgence has worked to the Court's disadvantage, as far as time and probably encouraging you to continue with that sort of litigation strategy here. But it is what it is.

So as I say, this morning's proceedings are ended. I assume the next thing we hear is going to be a notice of a hearing on the trustee's final report, which will also specifically include Mr. Cullen's application; is that correct?

MR. BERTOZZI: Excuse me, Your Honor. Is Your Honor going to make a decision on the Edwards & Angell fee application today or is that going to wait?

THE COURT: No, I can do that this morning. Unless there's any reason to -- that anybody I guess --

MR. DONAHUE: No, Your Honor, there's no reason not to make your findings on it, it's just that the money won't actually be paid until the final report is approved, because we have to have finite numbers.

THE COURT: Okay. Then there's housekeeping then. The trustee's application for a commission, is that $18,558, there's no objection to that. That may be approved. The application by Kirshenbaum & Kirshenbaum, attorneys to the trustee, fees in the amount of $29,760.62 and expenses of

$626.43 is approved. Mr. Cullen's application is not dealt with this morning. As we just talked over, that will be heard on the final hearing, on the trustee's final report.

Edwards, Angell, Palmer & Dodge, attorney for the Chapter 11 Trustee, fees in the amount of $45,953.75, expenses of $3,764.47. That excludes the $35,000 waiver that we've talked about. That is approved. What about objections by claimant's Michael Miller and Frederick Coor (phonetic)? What's that about?

MR. MONZACK: I believe, Your Honor, those in the nature of letters, that the Court has considered those to be objections written by some creditors --

THE COURT: Okay.

MR. MONZACK: -- that essentially say, "How can other people be paid when I'm not being paid?" I think --

THE COURT: Okay.

MR. MONZACK: I think that boils those down.

THE COURT: All right. To the extent that that's an accurate description of these objections, neither Mr. Miller or Mr. Coor are here, and in light of the response by the U.S. Trustee, to the fee applications, those objections are overruled, and objections are preserved, for Mr. Miller and Mr. Coor.

Harold Chorney's motion to clarify the fee application of Edwards & Angell is denied. And then we had supplemental

motions by Mr. Chorney. To the motion to clarify and the supplemental filing by Mr. Chorney, regarding the issue of standing, both those motions are denied. Your objections, Mr. Chorney, are noted.

I think that finishes the business for this morning. I obviously was trying to get away with it much too easily the first time around, but I think we have touched all the bases. So we'll see you again whenever the application for Mr. Cullen's fee, together with the hearing on the trustee's final report. I think we've got it narrowed down to two issues. I don't know how long that prediction will last but that's it for this morning. Thank you all for your attention.

MR. MONZACK: Thank you, Your Honor.

MR. DONAHUE: Thank you, Your Honor.

(Proceedings concluded)

* * * * *

CERTIFICATION

I, Melissa Smith, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated: May 15, 2008

Melissa Smith

Signature of Approved Transcriber

Melissa Smith

Typed or Printed Name