UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In re:

| | |
|---|---|
| CUMBERLAND INVESTMENT CORPORATION<br>Debtor | Chapter 7<br>Case No. 89-bk-11051 |

**POSITION OF EDWARDS ANGELL PALMER & DODGE LLP AS TO RESPONSES (DOCKET NOS. 995 and 996) FILED BY HAROLD CHORNEY**

1. Edwards Angell Palmer & Dodge LLP ("EAPD") filed its First and Final Application for Fees and Expenses (the "EAPD Fee Application") herein on July 20, 2007, requesting fees and expenses for the period August 23, 1990 through August 29, 1991, representing the Chapter 11 Trustee, John E. Cullen.

2. Paragraph numbered 8 of the EAPD Fee Application states that "EAPD is not seeking payment for $35,921.36 in fees for services rendered to the Trustee during the period August 30, 1991 through December 22, 1993 because, due to a glitch in transferring data to a new computer, EAPD cannot recover the data as to individual time entries for that period, although the computer does show the data to the aggregate amount of fees for said period."

3. Harold Chorney ("Chorney") filed a Motion to Clarify (Docket No. 966) ("Chorney's Motion") the EAPD Fee Application and a Supporting Memorandum (Docket No. 967). EAPD filed a Position (Docket No. 971) with regard to Chorney's Motion to Clarify. Chorney has filed Responses as Comments on Position and Supplement (Docket No. 995) and as Petitioner's Offer of Proof Concerning Standing (Docket No. 996) (collectively, the "Chorney Responses"), and this Court has requested EAPD's position as to the Chorney Responses and has scheduled a continued hearing on the EAPD Fee Application, Chorney's Motion, and Chorney's Responses for May 7, 2008 at 10:00 A.M.

4. Chorney's Motion requests:

   a. "a clarification of the basis of the 3/22/91 billing entry concerning 'Review Memos for Judge Pettine' in reference to Cumberland Investment Corporation."

   b. that the Court require EAPD "to supply [Chorney] with other documentation involving [Chorney's] interests, including but not limited to: any and all billing records which involve money borrowed from the estate of Cumberland Investment Corporation by the Trustee for administrative purposes in accordance with Title 11 U.S.C. Section 364, as well as any billing records which may involve missing assets of the estate."

5. As to 4(a) above, the time entry for 3/22/91 on EAPD's bill says "E. Bertozzi...Review memos for Judge Pettine; attention to Furness letter on compromise motion, letter to Weingarten... .50." To the best of the recollection (17 years later) of the undersigned, Edward Bertozzi believes the phrase "review memos for Judge Pettine" relates to an appeal taken by

Chorney to the U.S. District Court. In any event, only a portion of one-half hour is involved, and EAPD has no objection to the Court not awarding compensation for all or a portion of the one-half hour of time involved.

6. As to 4(b) above, EAPD takes the following position:

a. Chorney has no standing to object to or seek clarification of, EAPD's Fee Application. Per the Trustee's Report, there are millions of dollars of claims ahead of Chorney, and the assets held by the Trustee are very small in comparison. Thus, Chorney has no financial interest in this matter.

b. All the information in EAPD's billing records with regard to the period for which fees are requested, 8/23/90-8/29/91, has substantially been produced in the form of the bills which are attached to EAPD's Fee Application and which show a narrative of tasks performed, the date performed, the person who performed the task and the time spent.

c. EAPD's Application seeks fees and expenses for EAPD's services to the Chapter 11 Trustee during the period 8/23/90 to 8/29/91. Billing records for the other time periods are irrelevant to EAPD's Application. For Chorney to use EAPD's Application as an excuse for a fishing expedition as to irrelevant billing records is oppressive and unjustified.

7. Chorney's Responses address his position that he has standing to contest EAPD's Fee Application and to participate in this case. In Chorney's cover letter dated April 18, 2008, to this Court, Chorney states "Despite the fact that Petitioner [Chorney] has presented pleadings concerning the missing assets to this court, the district court, and the first circuit, Petitioner had argued his corporate ownership in the seized property and not argued the fact that some of the property seized, of significant value, either belonged to him personally or was non corporate property in which Petitioner has an interest." In Docket No. 996, Chorney states in paragraph numbered 3 that "there is no doubt that Pre-Columbian golden frog amulets of great value and possibly other items of value, personal items belonging to Harold F. Chorney, are missing." In Docket No. 995, Chorney states in paragraph numbered 5 that "also seized at this time were assets and documents personally belonging to Petitioner", in paragraph numbered 13 that "there were some 25 gold frogs and other pre-Columbian amulets", and in paragraph numbered 22 that "to date, Petitioner has not been able to obtain any accounting concerning the sale of the pre-Columbian gold frogs, other antiquities and gemstones, which Petitioner has an interest in."

8. As to Chorney's Responses, EAPD's position, as requested by this Court in its Order entered on May 1, 2008 (Docket No. 997), is as follows:

a. Chorney has in the past and continues now to claim that, of the assets seized by the Chapter 11 Trustee from the premises of the Debtor, there are many assets missing and not accounted for. This Court and the appellate courts have determined consistently that Chorney has no standing to assert such claim (see Mr. Monzack's Position dated February 27, 2008 (Docket No. 975) which sets forth the travel (the "Monzack Position")). These prior claims and rulings dealt with "missing assets". Chorney did not draw fine distinctions as to whether the

missing assets were estate assets or his assets. In fact, even now, in his cover letter dated April 18, 2008, he uses the term "his corporate ownership in the seized property", demonstrating that he has been complaining about all the "missing assets". Thus, the prior court rulings govern this latest of many attempts by Chorney to harass and damage the court officers who were unfortunate enough to serve in this case.

b. Even if the prior court rulings are not deemed to apply to all the "missing assets", Chorney is estopped by reason of laches from, at this late date, raising the claim that there has been no ruling as to his personal missing assets. Chorney states in his abovementioned April 18, 2008 letter, "Despite the fact that Petitioner [Chorney] has presented pleadings concerning the missing assets to this court, the district court, and the first circuit, Petitioner had argued his corporate ownership in the seized property and not argued the fact that some of the property seized, of significant value, either belonged to him personally or was non corporate property in which Petitioner has an interest." The various courts over the years have considered the issue of Chorney's standing. Chorney had opportunities then to argue his personal ownership of the "missing assets" rather than "his corporate ownership", but he did not do so. He should not be allowed to do so now, eighteen years later.

c. Even if Chorney is not bound by the prior court orders and even if Chorney is not estopped by laches, Chorney still has no standing in this case because there is no conceivable way that he can get a penny out of this estate. As stated in the Monzack Position, Chorney was ordered on July 2, 1992 to pay $200,000 to the Trustee (said amount, with interest, would now be approximately $584,000), Chorney has never paid a cent to the Trustee on said judgment, and Chorney has failed for many years to file with the Trustee sworn semi-annual financial statements as ordered by this Court. Per the Trustee, there are creditors of the estate who have claims for millions of dollars. Chorney claims that the golden frogs amulets are of "great value" (Paragraph 3, Dkt. No. 996), but Weingarten, while doing an inventory, remarked "This would appear to be some expensive costume jewelry, maybe ancient, couple of frogs; the price on it says $1750, lots of frogs". The Court will recall that Chorney grossly overstated the value of the coins in Debtor's inventory, and his claim that the golden frog amulets are of "great value" is undoubtedly similar.

d. The Court in July 1992 ordered Chorney to pay $200,000 to the Trustee as "partial reimbursement for the deliberate post-petition damage he has done to creditors..." EAPD is one of the creditors which has been so damaged: $49,718.22 per the pending fee application, plus the $35,921.36 for which reimbursement is not being requested, plus thousands of dollars in time spent in responding to Chorney's recent pleadings. It is clear that Chorney, who is highly intelligent and resourceful, is determined to continue to file inappropriate and unjustified pleadings which abuse this Court and the appellate courts, and continue to damage the officers of this Court who were unfortunate enough to become involved with this never-ending case. For the reasons given above, plus the reasons set forth in the Monzack Position and other filings by Mr. Monzack, Chorney should not be permitted to object to the EAPD Fee Application, nor to participate in this case.

WHEREFORE, EAPD respectfully requests that the Court deny Chorney's Motion.

Dated: May 6, 2008

/s/ Edward J. Bertozzi, Jr.
Edward J. Bertozzi, Jr.
(riba #1124)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
Fax: 401-276-6611

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2008 a true and accurate copy of the Position of Edwards Angell Palmer & Dodge LLP on Position of Edwards Angell Palmer & Dodge LLP as to Responses (Docket Nos. 996 and 996 filed by Harold Chorney) was sent electronically to Jason D. Monzack, Trustee, and Leonard DePasquale, U.S. Trustee, and by first class mail to Harold Chorney at 16 Spring Drive, Johnston, Rhode Island 02919.

/s/ Edward J. Bertozzi, Jr.
Edward J. Bertozzi, Jr.