**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

IN RE: **Cumberland Investment Corporation** **Bk No. 89-11051**
**Debtor(s)** **Chapter 7**

# SUPPLEMENT TO POSITION OF CHAPTER 7 TRUSTEE JASON D. MONZACK TO HAROLD F. CHORNEY'S MOTION TO CLARIFY FIRST AND FINAL APPLICATION FOR FEES AND EXPENSES OF EDWARDS ANGELL PALMER & DODGE LLP (DOCKET No. 966)

At the March 27, 2008 hearing this Court heard argument regarding the standing of Harold Chorney in this case and also inquired whether the issues that Mr. Chorney sought to raise at the hearing had been dealt with in prior Orders of this and other Courts. Regarding these issues and in an effort to assist the Court in this matter the Chapter 7 Trustee submits the following:

On or about December 16, 2002 Mr. Chorney submitted his brief to the First Circuit Court of Appeals regarding his appeal from the June 7, 2002 Order of the United States District Court for the District of Rhode Island dismissing Mr. Chorney's appeal of this Court's Order of March 14, 2002. That order granted the Joint Motion filed by the Chapter 7 Trustee and Republic Credit Corporation I for approval of distribution of the proceeds of the sale of secured creditors collateral and to abandon certain assets to secured creditor.

Quoting from Mr. Chorney's brief to the First Circuit, Mr. Chorney stated in his Introduction, inter alia, as follows:

> *Appellant, formerly the majority owner of the assets of Cumberland Investment Corporation, (C.I.C.) has presented this honorable court with a lengthy Designation of the Record that spans a thirteen year period in which Cumberland Investment Corporation has been in a bankruptcy proceeding, .... Appellant has claimed for several years that the assets seized by the Chapter 11 Trustee in Bankruptcy, John F. Cullen, on August 17, 1990, were not intact and that assets of C.I.C. were conspicuously missing since they were seized. .... Appellant and others have attempted on several occasions to obtain an accounting of the assets from the Chapter 11 Trustee without success. ..... The case was eventually converted to a Chapter 7 liquidating case. Jason D. Monzack was appointed to be the Chapter 7 Trustee. .... Efforts were made by the Appellant and Mr. Taft, a former client of C.I.C., to obtain an accounting of the assets at various stages during the liquidation of the assets, without success. ... One accounting sought by Appellant and Mr. Taft was a joint inventory taken by Mr. Monzack and Mr. Cadigan, of the F.D.I.C. ..... Since no accounting of the assets seized, those sold and those remaining were ever received, and the Trustee has refused to give Appellant inventories taken by him and FDIC, .... Appellant has claimed for the last thirteen years that assets of C.I.C., under the custody and control of parties other than the Appellant were indeed missing. This issue has been raised in both the District Court in the District of Rhode Island and then in the First Circuit Court of Appeals and the Supreme Court of the United States. ....*

In the Background and Travel section of his brief, Mr. Chorney, inter alia, states the following:

> *1. On June 10, 1994, Appellant sent a letter to the Trustee in Bankruptcy, Jason D. Monzack, indicating that certain assets appeared to be missing from the estate of Cumberland Investment Corporation.*
>
> *3. .... Appellant has discovered a transcript of the removal of the assets by the Chapter 11 Trustee in Bankruptcy, John F. Cullen.*
>
> *4. Also newly discovered by Appellant are 19 videotapes of the removal of the assets on August 17, 1990, by the Chapter 11 Trustee, John F. Cullen, indicating that some of the assets described in the June 10, 1994, letter to Mr. Monzack were indeed seized on August 17, 1990.*
>
> *5. Several requests to obtain an accounting of the assets of the estate of Cumberland Investment Corporation (CIC) by Warren D. Taft, a client of CIC, whose assets, on August 17, 1990, were seized yet could not be identified and located by the Trustee after the seizure. Appellant and Mr. Taft have been denied an accounting of the assets taken since the seizure. .....*

In the Discussion section of his brief, Mr. Chorney continues, inter alia, as follows:

> *Approximately 1000 pages of documents was presented to the District Court in the Designation of the Record. This Record contains evidence that was presented to the Bankruptcy Court concerning missing and unaccounted for assets as well as assets that have been tampered with or switched. The document ..., the August 17, 1990, transcript of the Removal of the Assets by Tustee (sic) John F. Cullen indicates some $500 bills with their serial numbers and some Pre-Columbian Art Work. ..... the Trustee Jason Monzack, and the U.S. Trustee in Providence and in Boston, as well as the court were informed of missing assets. .... According to 'newly discovered' evidence, obtained by the Appellant at the February 7, 2002, hearing, the Chapter 7 Trustee, Jason Monzack represented that the only assets remaining in the estate were some 380 silver dollars and three ten thousand dollar bills that were not sold at the December 7, 1999, Spink America Auction sales. .... Based upon the assets seized, as contained in the transcript of August 17, 1990, and the videotapes of the same date, certain assets were seized but never sold. Since the $500 bills, listed by serial number, and the Pre-Columbian Art Work were never listed for sale ... ... in documents presented by the Trustee in Notices for Intended Sale, these assets are missing and unaccounted for. Also 'newly discovered' is the fact that the 'secured creditor', Republic Credit Corporation I, is now making the representation that,*
>
> *"The Trustee has, with the permission of this Court, liquidated all remaining assets of the Debtor."*
>
> *In light of the fact that there has not been any permission of the bankruptcy court to sell the $500 bills or the Pre-Columbian Art Work, the statement of Republic Credit Corporation I is false and misleading. .....*

*At first blush the statement of Republic Credit Corporation I, that*

> *"The Trustee has, with the permission of this Court, liquidated all remaining assets of the Debtor."*

*Could be just a mistake on their part. However when viewed in light of the totality of the circumstances, this statement is not that innocent at all. The consequences of this statement, if true, would be to negate Appellant's claims that "the assets of the estate are not intact and that permission to sell all the assets was not granted."...*

*An extraordinary set of circumstances exists in the Cumberland Investment Corporation Bankruptcy case, resulting in a myriad of conflicts of interest and is the basis for the misrepresentation of Republic Credit Corporation I, to rise to a higher lever, that being a deliberate "fraud upon the court."...*

*On December 12, 1990, Appellant entered into an agreement with Eastland Bank, the chapter 11 Trustee and others concerning a loan to the trustee for estate administration. .... On July 3, 1991, the bankruptcy court found Appellant in contempt, mostly based upon representations of the Chapter 11 Trustee and his attorney, and issued an order stating that the Appellant was not to participate in the liquidation of the assets. .... Previously Appellant entered into the December 12, 1990 agreement ....on the basis of participating in the liquidation of the estate assets. The order further stated that the interests of the Appellant would be henceforth represented by the Trustee.*

*TRUSTEE REPRESENTING THE INTERESTS OF APPELLANT DENIES APPELLANT OF DUE PROCESS .....*

*There can be little doubt that there is an actual conflict of interest in either the Chapter 11 Trustee, or his successor, the Chapter 7 Trustee, representing multiple interests without a full, complete and frank disclosure of actual or potential conflict of interest, ....*

*The Trustee, in this set of circumstances where Appellant is claiming the Trustee of wrongdoing, cannot lawfully represent two masters. He cannot represent the interests of Appellant and the interests of the estate at the same time, especially in light of known conflicts of interest. Consequently, the court order dated July 3, 1991, is void.*

*The Trustee cannot hide behind the fact that he was following an order of the court. By following the court order, the integrity of the system is violated because the Trustee can no longer perform his fiduciary duties.*

*TRUSTEE VIOLATES HIS FIDUCIARY DUTIES IN NOT GIVING AN ACCOUNTING OF THE ESTATE TO APPELLANT*

*By not supplying an accounting to Appellant, the Trustee violates his fiduciary responsibilities. ....*

*Appellant and others were not 'interfering with the disposition of the assets' but rather were seeking an accounting of what was being done.*

*The court at the February 7, 2002, Hearing continues to state that Appellant's interests are represented by others and that orders have been entered, that are final orders.*

*MR. CHORNEY...that's why I'm seeking discovery from Mr. Monzack, to verify-*

*THE COURT: No., no. We---I don't think you have an interest here that's not represented in other ways, and any items where you're aggrieved, I'm sure there are orders that have been entered. Either way they've been appealed and disposed of somehow, or haven't been appealed, which makes them final orders, and, you know, you want to talk about things that happened in 1990 and 1994; if you know, crimes were committed in those days without statute of limitations problems in 2002, that'a a matter that you need to bring to the U.S. Attorney's Office.*

*Appellant believes the Court is constantly referring to the 7/3/91 order which denied Appellant fundamental rights, including the rights to redress of grievance and the right to due process in the February 7, 2002, proceedings.*

*MR. MONZACK AS SUCCESSOR TRUSTEE RELIES UPON A VOID COURT ORDER.*

*Since the court order of July 3, 1991, the underlying judgment of the February 7, 2002 order is contrary to law, as argued below, judgments based upon it are also void. Consequently, the February 7, 2002, order and the entire proceeding is void. .... In summary, the entire proceeding indicates a veiled "appearance of impropriety"."*

In the Argument section of his brief, Mr. Chorney went on to say, inter alia:

*1. Appellant was denied his first amendment right to redress of grievance, fifth amendment right to due process and equal protection under the law guaranteed by his fourteenth amendment rights by the court appointing a Trustee with a conflict of interest, and who is not a disinterested party to represent Appellant's property and other interests in a COURT ORDER, dated July 3, 1991, denying Appellant the right to participate at the 2/7/02 hearing and then the Court erred in incorporating by reference the reasons argued by the Trustee in his Motion to Strike in the denial of the accountability of the assets of the estate without an evidentiary hearing. Denying Appellant's appeal and not voiding the July 3, 1991, COURT ORDER, would be the same as allowing a party, not represented by counsel (in this instant case, the Appellant) to be appointed a counsel who is not disinterested and has conflicts of interest. In this case the Appellant was appointed counsel, the Trustee in bankruptcy, by a court that is suppose(sic) to be impartial. The Appellant did not request that the Trustee represent his property and other interests. In fact, it appears as if the Trustee, is or has been in possession of certain inventories and videotapes, and by non production of these documents, as requested on several occasions, has deliberately prevented the Appellant from obtaining information beneficial to his property and liberty interests due to apparent conflict of interest.*

*FIRST AMENDMENT RIGHTS OF APPELLANT HAVE BEEN VIOLATED BY THE JULY 3, 1991, COURT ORDER ....*

*It appears as if it is more expedient to silence the vocal critic than to follow the law and accept criticism. ...*

*In this instant case, Appellant is being deterred from exercising his First Amendment right to criticize the bankruptcy proceeding and to seek a redress of grievance in violation of his rights to due process.*

*APPELLANT'S FIFTH AMENDMENT RIGHTS HAVE BEEN VIOLATED BY THE JULY 3, 1991, COURT ORDER ....*

*What can be fundamentally fair about having an attorney appointed to represent your interests, when in affect he has interests that are in conflict with yours? Basically, in doing so, Appellant has been denied due process of law as well as equal protection under the law. ...*

*Appellant was not afforded the basic right to defend himself and his legal positions in violations of his due process rights and consequently was denied equal protection under the law in the bankruptcy court at the February 7, 2002 hearing and appealed the ruling to the District Court, which summarily dismissed his appeal after adopting the arguments of Republic Credit Corporation I and denied the accountability of the assets without an evidentiary hearing inspite(sic) of the fact that there were genuine issues of material fact. ...*

*In summary to the first statement of the issues, Appellant was denied his first and fifth amendment rights by the bankruptcy court appointing a Trustee with conflicts of interest and the COURT ORDER, dated July 3, 1991 is void because it is contrary to due process of law. ....*

*2. The Court, in accordance with Title 28§157 concerning a core proceeding involved with the administration of the estate, erred in not requiring an accounting by the Chapter 7 Trustee in accordance with statute, Title 11 U.S.C. §704(2). ...*

*...Both prior to an(sic) since Mr. Monzack's appointment, Appellant and others have not been able to obtain a list of assets currently in the possession of the Trustee, those items sold and those items remaining. In addition there are records of assets that were seized by Mr. Monzack's predecessor, John F. Cullen, the Chapter 11 Trustee that are missing, notably some yellow covered inventory notebooks of the estate of Cumberland Investment Corporation and some videotapes taken by FDIC, when Eastland Bank failed in 1991.*

*By not providing a detailed account to parties of interest upon request, the trustee has breached his fiduciary duties. By not requiring the trustee to produce an accounting of the assets and the documents above, the Bankruptcy Judge, responsible for all core proceeding arising under title 11, is derelict in his duties.*

*3. Appellant was denied due process and equal protection under the law when the Court denied Appellant an accounting of the Agreement, where the Appellant is a signatory, whereby the Trustee borrowed money for 'administrative expenses' subject to Title 11 U.S.C. §364.*

*Appellant has sought to obtain an accounting of moneys loan (sic) to the Trustee in Bankruptcy, John F. Cullen, Chapter 11 Trustee, allegedly for the purpose of administrating the estate of Cumberland Investment Corporation. Mr. Cullen was authorized to borrow up to $400,000 from Eastland Bank for said purposes. Appellant is a signatory of this note, dated December 12, 1990. ... Appellant has not been able to obtain an accounting of said note from Fleet Bank, successor in the note to Eastland Bank, nor from the trustee in Bankruptcy. ...*

*THE HEARING ON FEBRUARY 7, 2002*

*During the February 7, 2002, Hearing Appellant states to the court:*

*"...there's an awful lot of undisclosed matters involving the monies that were used in the 364 agreement. ...*

*...the court states, "...I don't think you have an interest here that's not represented in other ways, and any items where you're aggrieved, I'm sure there are orders that have been entered....." .... The court goes on to state that "....you don't have standing to start looking for discovery at this point on anything." .....*

*... Has the trustee breached his fiduciary duty? Does he have a conflict of interest between obeying the court and obeying his 'job description', namely the code. Is the trustee breaking the law? Is the trustee committing a "fraud upon the court"? Is the trustee entitled to immunity in not providing Appellant the requested information?.....*

*When faced with the dilemma of following the court's orders, and following statute, there can be little question as to which action the trustee should follow. An accounting of the 364 Agreement should have been supplied to Appellant, but was not. Once again the Trustee has breached his fiduciary Duties and Appellant was denied due process and equal protection under the law.....*

*7. APPELLANT, IN ACCORDANCE WITH THE NINTH AMENDMENT, WAS DENIED A RIGHT RETAINED BY THE PEOPLE, THE RIGHT TO DEFEND HIMSELF. .....*

*Historically, in this instant case, when Appellant, seeking an accounting of the estate of Cumberland Investment Corporation, criticized the officers of the court for conflicts of interest and lack of disinterestedness, Appellant was enjoined from contacting witnesses in his own defense. See court order dated August 23, 1990. At the insistence of the U.S. Attorney, this order was modified so that Appellant could contact witnesses in his own defense for the criminal trial. Now the Court officers seek to deny Appellant the right to obtain evidence 'in his*

*own defense' concerning issues in his criminal trial, namely that the assets of the estate were not in tact(sic) and that the assets were missing as Appellant had claimed in his criminal trial but lacked the evidence to prove. Secondly, since assets were missing and unaccounted for, the amount of 'restitution' to the alleged victim, the secured credit was calculated on the value of an incomplete inventory.*

*The Appellant, a 'convicted' criminal defendant, claims that he has a constitutional right, protected by his First and Fifth Amendment right to due process, to defend himself by gathering evidence to overturn his conviction. Pre-trial, Appellant was impeded and deprived of evidence that he was seeking. Appellant was convicted. Appellant claims that he is currently being deprived of the right to defend himself and overturn his conviction. The officers of the bankruptcy court are utilizing a court order dated July 3, 1991, appointing a trustee, accused of wrongdoing by the Appellant, with conflicts of interest, and interests adversarial to the Appellant to defend Appellant's interests. ....*

*Because Judge Votolato clearly usurped a power belonging to Appellant, the Court Order, dated July 3, 1991 is void in accordance with F.R.C.P. 60(b)(4).*

*....*

*The judgment was void from its inception. As a result, in accordance with Rule 60(b)(5), "...if the underlying judgment is void, the judgment based upon it is also void. .... Consequently the court order of February 7, 2002, is also void....*

Finally, in his Conclusion, Mr. Chorney stated, inter alia,:

*"Acceptance of the court's rulings in this instant case would place society in jeopardy. The Appellant is like a defendant attempting to prove his case. However, the Appellant's hands are being tied and his mouth is being gagged by court orders that deny Appellant, defendant, due process of law by the court appointing Trustees, with conflicts of interest adverse to defendant to represent the interests of defendant. ....*

*In order for the Appellant to fully defend himself, he needs to present evidence in the possession of those that allegedly "represent" him. But those that "represent" the Appellant will not disclose this evidence, namely a full and detailed accounting of the assets of the estate of Cumberland Investment Corporation, even though required by statute, due to conflicts of interest. The rights of Appellant, an accused and convicted defendant in a criminal case, stemming from a referral by parties with conflicts of interest, namely the secured creditor and the bankruptcy officials, are once again at jeopardy. Appellant is being denied the right to defend himself and to prove his case by the court denying the production of an accounting. ...*

*To uphold the rulings, based upon the July 3, 1991, court order would be an affront to our way of life by denying a defendant, Appellant, his fundamental right to defend himself. ...."*

The multitude of issues previously referenced in Mr. Chorney's own words and raised in his 2002 appeal to the First Circuit were dealt with quite succinctly by the First Circuit in its June 20, 2003 per curiam decision (attached hereto as Exhibit A) when the First Circuit stated:

> *"Reviewing the judgment below in light of the record on appeal and the arguments in appellant's brief, we affirm the district court's summary dismissal of this appeal from an order of the bankruptcy court for reasons of lack of standing and the barring effect of prior final orders and judgments."*

In his motion to assist and help the Court concerning the first and final application for fees and expenses of Edwards Angell Palmer & Dodge LLP Mr. Chorney states, inter alia, that

> *"No accounting of loans made by Eastland to Trustee have been disclosed to Petitioner or to the creditors of the estate of C.I.C."*

In his motion, Mr. Chorney also states that:

> *"Despite the fact that Petitioner is a party to the Court Order, dated December 12, 1990, Petitioner has not been able to obtain an accounting of the funds borrowed or used by the Chapter 11 Trustee."*

During the March 27, 2008 hearing, Mr. Chorney stated:

> *MR. CHORNEY: There were lists of items that I sent in letters to Mr. Monzack going back many years. It lists some gold frogs and those items have never been sold. They've never appeared anywhere. Yet they appear on a transcript of August of 1990 of items that were removed from the premises at 141 Main Street.*
>
> ……….
>
> *MR. CHORNEY: That's pre-Columbian - -….*

And at another time at the hearing he stated:

> *"MR. CHORNEY: Besides the information that's being presented to the court, there's also questions being presented concerning the 364 agreement going back to December of 1990, and whether or not any fees or other monies have been paid out in relationship to that agreement which was signed by Your Honor on December 12 or 13th of 1990. It involves some $400,000 that were borrowed by Mr. Cullen from the estate for administration of the estate."*

In responding to the above statement by Mr. Chorney, this Court demonstrated its understanding of Mr. Chorney's true motive when this Court stated:

> *THE COURT: …You want to reopen this whole case, as I understand it. You want to start doing discovery now. I think we've – I'm satisfied and – that all*

> *of your complaints – every single complaint that you raised over the period since the filing of this case, has been hashed, rehashed and done with. You refuse to let go.*

Mr. Chorney's goal is further demonstrated in his Supplemental Memorandum of Law filed in response to the First Circuit's Order to show case why Mr. Chorney's pending First Circuit pleading should not be dismissed. Mr. Chorney filed his supplemental memorandum with the First Circuit on April 15, 2008. In that supplemental memorandum Mr. Chorney states that:

> *...Petitioner will show that he has been denied access to the Bankruptcy Court by orders that were based on either ignorance of or presentation to said court of fraudulent misrepresentation....*
>
> *...Petitioner avers those orders were infected and that infection could only be removed by seeking remedy by a direct appeal to this Court for jurisdiction.*
>
> *Petitioner avers that if this Court does not accept jurisdiction of this matter, petitioner has no forum available to correct wrongs and injustices in this matter since the Bankruptcy Court has denied petitioner access to that court for relief regardless of whether Petitioner has property rights or not.*

As is apparent from Mr. Chorney's appeal of this Court's March 14, 2002 Order, his most recent submissions to the First Circuit and his most recent motion filed in this Court in response to the fee applications of Edwards Angell Palmer & Dodge LLP, Mr. Chorney cleverly changes the description of each document filed, but seeks to raise the same issues over and over again. This was made clear in the following exchange between Mr. Chorney and the Court at the March 27, 2008 hearing:

> *MR. CHORNEY: May I be heard?*
>
> *THE COURT: Yes.*
>
> *MR. CHORNEY: Your Honor, I sent a letter to both Mr. Monzack, the court and to the U.S. Trustee listing out those items that were conspicuously missing.*
>
> *Since I've sent those letters out, no one has come forward and said here's the item; it was sold on such and such a date for such and such a price because there has been no accounting of the assets taken, the assets sold and they do appear on the transcript of August – I believe it's August 17th of 1990, Your Honor, that specifically lists these items out and there's no proof by any of the officers of this court that those items were sold and for how much, despite whatever is being said right now.*
>
> *And also listed was some 500 in thousand dollar bills, including the serial numbers of those bills were listed specifically in the transcript.*

*THE COURT: But you admit that you have raised these issues to – numerous over a long period of time.*

*MR. CHORNEY: Yes, Your Honor, I have raised these issues. Absolutely have.*

The Chapter 7 Trustee asserts that this Court should treat this most recent filing by Mr. Chorney in a similar fashion as the First Circuit treated Mr. Chorney's appeal of this Court's March 14, 2002 Order and dismiss Mr. Chorney's motion for "lack of standing and the barring effect of prior final orders and judgments."

Respectfully submitted,

**/s/ Jason D. Monzack**
Jason D. Monzack, Esq.
KIRSHENBAUM & KIRSHENBAUM
Attorneys at Law, Inc.
888 Reservoir Avenue
Cranston, RI 02910
(401) 946-3200 Telephone
(401) 943-8097 Facsimile

Dated: April 17, 2008

## CERTIFICATION

I, the undersigned, hereby certify that on the 17th day of April, 2008, I electronically sent a copy of Supplement to Position of Chapter 7 Trustee Jason D. Monzack to Harold F. Chorney's Motion to Clarify First and Final Application for Fees and Expenses of Edwards Angell Palmer & Dodge LLP to the U.S. Trustee, Edward J. Bertozzi, Jr., Esq. and by first class mail to Gary Donahue, Esq., U.S. Trustee's Office, 10 Causeway Street, Boston, MA 02222, John F. Cullen, Esq., 17 Accord Park Drive, Suite 103, Norwell, MA 02061 and Harold Chorney, 16 Spring Drive, Johnston, RI 02919.

**/s/ Jason D. Monzack**

H
In re Cumberland Inv. Corp.
C.A.1 (R.I.),2003.
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.Not for Publication in West's Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. First Circuit Rule 36(b). (FIND CTA1 Rule 36.)

United States Court of Appeals,First Circuit.
In re CUMBERLAND INVESTMENT CORPORATION, Debtor.
Harold F. CHORNEY, Appellant,
v.
REPUBLIC CREDIT CORPORATION I, Appellee.
**No. 02-1976.**

June 20, 2003.

Appeal from the United States District Court for the District of Rhode Island, Ernest C. Torres , U.S. District Judge.

Harold F. Chorney on brief pro se.
Justin T. Shay and Cameron & Mittleman LLP on brief for appellee.

Before BOUDIN , Chief Judge, CAMPBELL , Senior Circuit Judge, and LIPEZ , Circuit Judge.

PER CURIAM.
*1 We have jurisdiction over this appeal because the notice of appeal was filed within thirty days of the district court's order disposing of appellant's motion for "reconsideration," a motion we think properly construed as "a motion to alter or amend the judgement under Rule 59."*See* Fed. R.App. P. 4(a)(4)(A)(iv)

Reviewing the judgment below in light of the record on appeal and the arguments in appellant's brief, we *affirm* the district court's summary dismissal of this appeal from an order of the bankruptcy court for reasons of lack of standing and the barring effect of prior final orders and judgments.

*Affirmed.*

C.A.1 (R.I.),2003.
In re Cumberland Inv. Corp.
Slip Copy, 2003 WL 21435745 (C.A.1 (R.I.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT "A"