UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In Re | * | Case No. 89-11051(ANV) |
| | * | |
| CUMBERLAND INVESTMENT | * | Providence, Rhode Island |
| CORPORATION, | * | March 27, 2008 |
| | * | |
| Debtor. | * | |
| | * | |
| * * * * * * * * * * * * * * * | * | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ARTHUR N. VOTOLATO
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Edwards & Angell: | EDWARD J. BERTOZZI, ESQ.<br>Edwards & Angell<br>2800 Financial Plaza<br>Providence, RI 02903 |
| For the Chapter 7 Trustee: | JASON D. MONZACK, ESQ.<br>Kirshenbaum & Kirschenbaum<br>888 Reservoir Avenue<br>Cranston, RI 02910 |
| For the Petitioner, Pro Se: | MR. HAROLD CHORNEY<br>16 Spring Drive<br>Johnston, RI 02919 |
| For the U.S. Trustee: | GARY L. DONAHUE, ESQ.<br>U.S. Trustee's Office<br>10 Dorrance Street, Room 910<br>Providence, RI 02903 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Transcription Service, Inc.**
**67Elaine Drive**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES: (Cont'd.)

Also Present: MR. JOHN F. CULLEN
Historic Charlestown Navy Yard
C-3
Shipway Place
Boston, MA 02129

Court Recorder: MS. JENNIFER WATTS

(Proceedings commenced at 11:25 a.m.)

THE COURT: Cumberland Investment Corporation. Fee applications and a motion by Harold Chorney to clarify the fee application of Edwards and Angel, Palmer, et cetera. There's a response to that and we have several fee applications prior to that.

MR. CHORNEY: Good morning, Your Honor. Harold Chorney for petitioner. There was a --

THE COURT: We're just calling this case now. Okay.

MR. CHORNEY: I beg your pardon, Your Honor?

THE COURT: What are you about to say? What's your --

MR. CHORNEY: What am I about to say? Well, first of all, I'm here on a motion to clarify. First --

THE COURT: Okay. Why -- go ahead. I'm sorry.

MR. CHORNEY: A first and final fee petition was put in by Mr. Bertozzi and Bertozzi and Edwards and Angel in July of 2007. A motion to clarify was put in by petitioner in August of 2007.

Since that point in time, petitioner has obtained a copy of the missing billing that Mr. Bertozzi stated that he wasn't going to bill for; some $39,000 in fees for a specific time period.

Also, in October of 2007 Mr. Cullen appeared before

this court requesting the ability to refile his billings in this case 14 years after he had performed some duties.

Petitioner has also acquired copies of Mr. Cullen's original billings from September of 1991 and has prepared today a motion and a memorandum to assist and help the court concerning the first and final application for fees and expenses of Edwards and Angel, Palmer and Dodge, LLP and would like to present that to the court at this point in time.

MR. BERTOZZI: Your Honor, I object. Edward Bertozzi --

THE COURT: Step up to the mic, please.

MR. BERTOZZI: Edward Bertozzi of Edwards, Angell, Palmer and Dodge.

Your Honor, my understanding is that I should be allowed to present my application first. Mr. Chorney's motion is really an objection to my application.

So I would respectfully ask Your Honor that I be allowed to present my application first and then would it be in order for Mr. Chorney to be heard, except that he doesn't have standing.

The first thing would be if I could please present my application, then at least we would all know what is at issue.

THE COURT: Well, that's what I was trying to get

at with Mr. Chorney when he started to speak, but he got his foot in the door before you -- I should have been a little more less polite, okay, but here we are.

Are we okay, Mr. Chorney? You're going to be allowed a chance to speak, but you were trying to do it out of turn.

MR. CHORNEY: Yes, I'd like to present this to the court at this time.

THE COURT: In good time, okay.

MR. CHORNEY: Okay. Surely.

THE COURT: Go ahead, Mr. Bertozzi.

MR. BERTOZZI: Thank you very much, Your Honor.

Your Honor, we're here today on --

THE COURT: You can have a seat, Mr. Chorney. Make yourself comfortable.

MR. CHORNEY: Okay.

THE COURT: You can sit at counsel table, if you like, right next to Mr. Monzack. How's that?

MR. CHORNEY: Thank you very much.

MR. BERTOZZI: Your Honor, we're here today on the first and final application for fees and expenses of Edwards, Angell, Palmer and Dodge, LLC, which is the successor to Edwards and Angell.

And, Your Honor, Mr. John Cullen was appointed Chapter 11 trustee in this case, Cumberland Investment

Corporation, back on August 16, 1990.

And Mr. Cullen hired Edwards and Angell on August 23 of 1990 to be his counsel, and filed an application for approval of hiring Edwards and Angell as his counsel on August 23, 1990, which the court approved on September 19, 1990.

So this application is for fees and expenses for the period of August 23, 1990 through August 29, 1991.

And the services, just to summarize them, Your Honor, that were performed by myself and my firm during that approximately one-year period were as follows: We assisted the trustee in obtaining possession of the debtor's assets and records and information with respect to the debtor and the debtor's operations.

We analyzed and evaluated claims and liens of secured creditors, primarily Eastland Bank and People's Bank, and negotiated and litigated with respect thereto.

We analyzed and evaluated the claims of so-called redemption coin claimants and took action with respect thereto. We negotiated and obtained a financing order from the court with regard to Eastland Bank to fund the trustee's activities in securing and liquidating the debtor's assets.

We assisted the trustee in analyzing and evaluating the appropriate methods of liquidating the debtor's assets and we performed the above services in the face of continuing

and very strong opposition by the debtor, directed by its principal, Harold Chorney.

Attached to our -- well, let me summarize, Your Honor. We're seeking for services for this period the amount of $45,953.75 and expenses in the amount of $3,764.47. The total hours that we spent on this matter during the period in question were 258.5 hours and the blended hourly rate was approximately $175.

I worked 190 hours during this period on this matter and my rate at that time ranged between $190 to $210. It changed midway.

I had three associates; Ted McCarsky, Andrea Cocoran, and Gail Erlich (ph), who worked a total of 68.5 hours and Mr. McCarsky's rate for this 13 hours was $125. Ms. Cocoran's rate for her 45.75 hours was $125 and Ms. Erlich's rate for her 9.75 hours was $135.

Now, attached to my application are bills which are basically printouts from our computer, Your Honor, for the time period in question; that is to say, between August 23 of 1990 up through August 29 of 1991.

And these bills, which as I say are basically printouts right from the computer into which we had entered the time, show the date of the task done, they show the name of the person performing the task, a narrative description of the task and then the amount of time spent on that particular

task.

And I submit, Your Honor, that these are certainly -- conform to the practice at the time as to explaining what was done, who was involved and by reading these, I think one gets a good idea of the work that was put in.

I can try to explain further, but this time was in 1990 and, frankly, my memory for the minutia is very dim at this point. I can remember some of the basic things that we went through; that is to say Mr. Cullen and myself.

Essentially, it's just as I just as I described in my outline of the services. We were trying to get our hands around the assets of the debtor and find out what they were worth and liquidate them. The company was not operating under Mr. Cullen.

Now, Mr. -- I'd like to address Mr. Chorney's motion for clarification. It's really an objection and kind of a discovery request and the first thing I would like to say is, Your Honor, I really object to it on the ground that Mr. Chorney doesn't have standing and he has cost my firm a lot of money for which we're not expecting to get very much payment at all and he's just continuing it.

And that seems to be how he gets his satisfaction in all of this. And that's all well and good. It's a free country. But he needs to have standing to be objecting to this fee application and as I understand it, and I think a

filing by the trustee, Mr. Monzack, confirmed, there are millions of dollars of claims ahead of him. He's the shareholder, as I understand it, in this company. So he's not in the money.

What Your Honor decides with respect to my application will not mean one dime to Mr. Chorney. And there are other people who have reviewed my application who are in a much better position, actually, to comment on it and make objections, if their objections are in order, and that would be the trustee, whose duty it is to review my application, and the U.S. Trustee, who I understand will be reviewing it and reporting to the court on it as well.

And I would submit that that would be sufficient guidance, or -- my point is just that Mr. Chorney does not have standing to object to this application and it shouldn't be considered.

Now --

THE COURT: Before you -- you're going to leave the standing issue now, or --

MR. BERTOZZI: No -- I was going to leave the standing issue.

THE COURT: Okay. Before you -- okay. Let's interrupt you then right here. I'd like to hear from the trustee and the U.S. Trustee regarding this standing issue.

MR. MONZACK: If Your Honor please, Jason Monzack,

Chapter 7 Trustee.

After the filing of Mr. Bertozzi's fee application, the court issued an order requesting my position with regard to Mr. Chorney's motion to clarify the that he filed in response to Mr. Bertozzi's fee application. I submitted that position to the court.

I won't go through in detail what my position said, but it did recite a history of the case, the history of this court's prior orders and a history of Mr. Chorney's actions, although summarized in a brief fashion in this case.

In the position that I filed with the court, I also stated that I did not believe that Mr. Chorney has any standing to argue against Mr. Bertozzi's fees, as he's not a creditor, he didn't file a claim and Mr. Bertozzi is quite correct that the accounting that's been submitted to the U.S. Trustee's Office shows that certainly there will be no funds going back to stockholders of Cumberland Investment Corporation.

In fact, there were a series of auctions that were conducted during the administration of this case. In those auctions of coins and stamps, this court approved carve outs pursuant to each auction as to a certain amount of the funds were designated for administrative expenses and a certain amount of the funds were designated for unsecured creditors.

So the unsecured creditors also will not be

affected by any of the orders entered by this court, as there is a sum, approximately $60,000, that pursuant to the formulas that were approved by this court with regard to each auction, that sum is designated for unsecured creditors and will not be invaded by administrative expenses.

Then there's a separate sum of money which the estate is holding designated, pursuant to those prior orders, for administrative expenses. The Chapter 11 administrative expenses that have been filed greatly exceed that amount of money.

So in fact, any decision that the court makes with regard to fee applications will change the allocation of funds amount Chapter 11 administrative expenses. That's the group that will be affected and albeit, in that group are some redemption coin holders who purchased coins from the debtor during the administration of the Chapter 11. Again, Mr. Chorney is not one of those.

And so that's the group that will be affected by this court's orders regarding the fee applications.

The prior orders that this court has entered with regard to Mr. Chorney's prior filings essentially set up a screening process by which the court would determine whether or not a pleading would be accepted.

And that was justified based upon the whole history of Mr. Chorney's involvement in this case.

As sort of an aside and to further illustrate the point, in my position I did make reference to the pleading that Mr. Chorney recently filed in the First Circuit. My interpretation of his pleading was to seek a review of an order entered by this court in November of '04.

That pleading is currently subject to an order to show cause why that submission to the First Circuit should not be dismissed and Mr. Chorney has filed significant filings in the First Circuit regarding that.

But again, it appears that Mr. Chorney filed that and probably has no standing or the court has no jurisdiction to hear such a matter, but the pleading that Mr. Chorney filed in this case appears to me to continue the long history of Mr. Chorney's filings in this case, which has served to impede the administration of the case, and regardless of the decision that the court makes regarding the various fee applications that are pending before the court, will not have any effect on Mr. Chorney and in my opinion, Mr. Chorney has no standing to assert these positions before the court.

THE COURT: Thank you. Mr. Donahue.

MR. DONAHUE: Good morning, Your Honor. Gary Donahue for the United States Trustee addressing the court's question regarding standing.

Obviously, there's two types of standing; there's traditional motions of standing. One must have an economic

interest in the outcome of the proceeding before the court and the statutory standing, I stand here with statutory standing pursuant to 11 U.S.C. Section 307 and 28-586.

Mr. Chorney has no such statutory standing that I am aware of and as the trustee has artfully articulated, he has no interest in the economic outcome of the case.

Just because someone is curious or feels interested in a proceeding does not give them standing to address the court on pending matters and I would suggest Mr. Chorney does not have economic standing for the reasons articulated by the trustee.

What we have is the trustee's final report, report on claims and proposed distribution pending with my office for review.

My sister responded to the court's order for a written position that we would like an additional 30 days to respond to the pending fee applications, Your Honor, because our hope is I'll file a trustee's final report, along with the fee applications and a certification either that we have no objection or we object for the following reasons, all at once and the case can move to closing.

If we do that 30-day period, hopefully, the circuit will dispose of whatever that pleading is or paper that has been filed with the circuit.

I would simply point out as to the fee application,

which had been addressed by Mr. Bertozzi that he's requested $45,000. My understanding of the final report proposed distribution as it stands now, we're looking at 37 percent at the Chapter 11 level. So we're talking roughly $15,000, maybe $16,000 for work that was performed 17 years ago.

It won't affect our outcome to the unsecured creditors because that's subject to a specific (indiscernible) and it won't affect Mr. Chorney in any way that I'm aware of.

So unless he can articulate how his economic interests are affected, it would seem that he lacks standing, Your Honor, and I would just reiterate my sister's request in our pleading be allowed 30 days.

We'll file the entire final report at once and we'll either file it with an objection of a certification that it's appropriate to close it, Your Honor.

THE COURT: Thank you.

Okay. Mr. Chorney, I'm going to hear you now and I'm going to make it very clear that you're restricted, as were the people who preceded you, to address the issue of standing. Do you understand that?

MR. CHORNEY: Strictly the issue of standing.

THE COURT: Right.

MR. CHORNEY: Okay. I'm a layman of the law, Your Honor. I can't argue that point as eloquently as the people

that came before me, but I do have property interests in this case.

THE COURT: What are they?

MR. CHORNEY: There were lists of items that I sent in letters to Mr. Monzack going back many years. It lists some gold frogs and those items have never been sold. They've never appeared anywhere. Yet they appear on a transcript of August of 1990 of items that were removed from the premises at 141 Main Street.

THE COURT: Okay. These are gold frogs now?

MR. CHORNEY: Yes. Yes.

THE COURT: Okay. Mr. Monzack --

MR. CHORNEY: That's pre-Colombian --

THE COURT: -- we're going to address these things one at a time now. What do you say? You know, we're going to try to dispose of this thing in an orderly way.

MR. MONZACK: I never had possession of any gold frogs. I became the trustee in 1993 and Mr. Chorney's referring to an August, 1990 transcript, but I can say categorically I never had in my possession any gold frogs.

THE COURT: Okay. What's the origin of these documents that Mr. Chorney's referring to that supposedly establish the existence of that stuff?

MR. MONZACK: I'm not really sure what Mr. Chorney is referring to. I know there was --

THE COURT: Do you have the transcript with you?

MR. CHORNEY: I don't have the transcript with me, Your Honor, but it has been presented to this court. It's from Allied Court Reporters. It was obtained by my --

THE COURT: Do you want me to go find it for you?

MR. CHORNEY: I beg your pardon?

THE COURT: Is that what you're saying? You would like me to find that reference to these items?

MR. CHORNEY: No, sir. I can produce that very easily, if you'd like it, but it's been produced to this court before. Mr. Cullen's aware of it.

On his fee application he puts down that every one of the removals of assets had three video people there and also a transcript of it was taken, even though these videos were never produced when Mr. Monzack, in May of 1995, asked for production of videos and transcripts.

THE COURT: Let me interrupt you again, and I probably do this more than you like --

MR. CHORNEY: Surely.

THE COURT: -- but Mr. Cullen, what do you -- I'm going to ask you to respond to this allegation about the specific items that Mr. Chorney just referenced to establish his alleged interest in property and, therefore, his standing in this case.

MR. CULLEN: Your Honor, with reference to the

specific pieces of properties that he's articulated, I have no knowledge.

It is true that all of the property that was taken out was inventoried in three ways; by videotape, by a stenographer that was there, as each part was moved, it went into an armored car with the Rhode Island State Police and the local police. But I don't have any knowledge of those two items.

All of the stuff that was removed that night was removed consistent with the policies and procedures to protect each and every asset that was removed from the building, and it was removed to a vault --

THE COURT: Only -- I ask this question from a different perspective. This is not new news going back what; 18 years now? The allegations that property has been disappearing under the auspices of the court and that much property has been unaccounted for, haven't these issues been raised and litigated and disposed of someplace, sometime, usually beginning in this court and ending up somewhere else?

MR. CULLEN: Yes. All the way up to the First Circuit. This has already been disposed of.

Mr. Chorney raised this question at his criminal trial with Judge Bateen(Phonetic). He raised them on issues that I had allowed property of the estate to be dissipated or otherwise removed or defalcated. He made that a serious

issue.

Judge Bateen then ordered me to court on those issues to testify so Mr. Chorney could cross examine me. I went down. Judge Bateen came on the bench promptly at 1 o'clock at Mr. Chorney's request. I took the stand. I wanted 20 minutes. Judge Bateen said "What questions do you have, counsel, of Mr. Cullen with reference to the allegations your client is making?" "We have no questions."

He's raised this every time he possibly can, okay, in any situation. It's always that something's removed, something's missing, something's lost. He never speaks to the -- all of the creditors in this case that he defalcated and went to jail for, including the false documents that he filed with Eastland Bank.

THE COURT: Okay. You're going a little bit beyond my question --

MR. CULLEN: I know I am, but I'm saying at the same point in time, I think the record is absolutely clear, he's accused Mr. Monzack, the United States Trustee's Office, this court, everybody, of acts that never occurred. And the first -- when you made the ruling --

THE COURT: We're talking about gold frogs right now.

MR. CULLEN: Never saw them.

THE COURT: All right. But my main question is

haven't these same questions been raised, litigated, adjudicated and been done with in the past?

MR. CULLEN: That's correct, Your Honor. And in terms of the -- you made a ruling and a judgement on some of the dilatory tactics and you awarded me $200,000 for the dilatory tactics that was raised then and went up to the First Circuit. The First Circuit affirmed your judgement and that was all raised in there.

THE COURT: Mr. Monzack?

MR. MONZACK: If Your Honor please, to be honest, I don't recall if the two gold frog issues has been specifically raised before or not, but numerous issues akin to that have been raised. There have been numerous judicial proceedings.

These issues have been disposed of by this court and by other courts. In fact, when I first got involved, I went over -- I visited with the U.S. Attorneys Office and the U.S. Attorney's Office did whatever investigation that they did with regard to claims that both Mr. Chorney had made and Mr. Taft, I believe, was involved. We went over and viewed all the assets that they were holding.

They had videotapes that were made available for additional review by Mr. Taft and Mr. Chorney, and every issue that Mr. Chorney had raised in the past was referred to somebody for investigation and none of those bodies, be it

this court, be it the U.S. Attorneys Office, be it the FBI, has ever reported back to me and said that there was any grounds for these claims that were being made.

THE COURT: All right. Mr. Chorney.

MR. CHORNEY: May I be heard?

THE COURT: Yes.

MR. CHORNEY: Your Honor, I sent a letter to both Mr. Monzack, the court and to the U.S. Trustee listing out those items that were conspicuously missing.

Since I've sent those letters out, no one has come forward and said here's the item; it was sold on such and such a date for such and such a price because there has been no accounting of the assets taken, the assets sold and they do appear on the transcript of August -- I believe it's August 17th of 1990, Your Honor, that specifically lists these items out and there's no proof by any of the officers of this court that those items were sold and for how much, despite whatever is being said right now.

And also listed was some 500 in thousand dollar bills, including the serial numbers of those bills were listed specifically in the transcript.

THE COURT: But you admit that you have raised these issues to -- numerous over a long period of time.

MR. CHORNEY: Yes, Your Honor, I have raised these issues. Absolutely have.

THE COURT: Okay.

MR. CHORNEY: Yes.

THE COURT: Now, you understand that I'm not a cop, don't you?

MR. CHORNEY: Yes, Your Honor.

THE COURT: And it's not my job to investigate your allegations. They've been reported to the U.S. Attorney, according to Mr. Monzack. They've been reported to other authorities. Your inquiries, your complaints and your allegations have been looked at and dealt with and are history.

And that's the point that I'm trying to make now on your issue of I am -- you know, I have standing here because I have property rights in items that are still out there and unaccounted for. I don't see anything that is not accounted for that hasn't been dealt with. Maybe improperly, in your view, but done with. Do you get it?

MR. CHORNEY: Well, I heard what you said, but I don't feel any accounting of that has been provided, Your Honor.

THE COURT: Okay. Go ahead with your presentation on standing only.

MR. CHORNEY: Strictly on standing.

THE COURT: Absolutely.

MR. CHORNEY: Well, Your Honor --

THE COURT: Not an inch beyond that. Okay?

MR. CHORNEY: I don't know whether or not I have the standing to give the court help and assistance in relationship to missing billings by both Mr. Cullen and Mr. Bertozzi. Would the court like to have those? I have them with me.

MR. BERTOZZI: It's irrelevant. Your Honor, I'm not seeking --

THE COURT: Do you understand --

MR. BERTOZZI: I'm not seeking fees for the --

THE COURT: Okay. Have a seat.

Your point regarding missing billing information by Mr. Bertozzi for a period of -- what is it; August through October?

MR. BERTOZZI: Yes, Your Honor.

THE COURT: His point is that we don't have those billing records; therefore, we're not going to charge for those. So it's none of my business; it's none of yours.

MR. CHORNEY: You are going to charge for Mr. Cullen's billings for the same time period and they're contradictory.

THE COURT: What's contradictory?

MR. CHORNEY: The billings of Mr. Bertozzi and the billings of Mr. Cullen for the same time period. The missing billings of Mr. Bertozzi, as well as the billings that he

presented to this court have contradictions --

THE COURT: And how do you know they're contradictions? You have these billings?

MR. CHORNEY: Yes, I do. And it's part of this package that I want to present to the court.

MR. BERTOZZI: It's not relevant to my application. It may be relevant to Mr. Cullen's application.

MR. MONZACK: I have to assert the same position, Mr. Bertozzi, that he has no standing.

THE COURT: I'm going to take your package. I'm going to look at it, as we say in some circles, in camera.

MR. CHORNEY: Sure.

THE COURT: They're not an exhibit. I'm not accepting them except to look at them and to try to make my own determination of what it is you say you're submitting to me. Okay?

MR. CHORNEY: Surely, Your Honor. Thank you. Can I approach and give them to this gentlemen here?

THE COURT: Yes. By the way, what are the time constraints here as far as your travel, Mr. Bertozzi?

MR. BERTOZZI: Well, Your Honor, I really have to leave by 1:00.

THE COURT: Okay.

MR. BERTOZZI: Thank you.

MR. CHORNEY: Your Honor, I can provide the court

with extra copies if needed.

THE COURT: Thank you. Okay. I probably got what I asked for. And just after a quick look at these, they look like they're applications that have been filed here; affidavits.

I'm going to return these to you, Mr. Chorney, and have you point out whatever contradictions you're alleging and you're going to -- by the way, you're going to proceed from now on at the same risk that every other party appearing before the court.

If it turns out that the court determines after giving you what I hope is a full hearing that you were behaving in either a frivolous or obstructionist or any improper way, you're going to subject yourself to some more sanctions. I realize that that doesn't mean much to you these days. We've had serious issues like this in the past.

But as I say, I'm going to return these to you. I'm going to ask you to separate out of that pile of papers the specific items that you say are contradictory. That's your job.

MR. CHORNEY: Surely. Can I use the overhead over here? Can I use this --

THE COURT: Oh, no. You're not going to take our time while you do that.

MR. CHORNEY: It's already listed in the pleading,

Your Honor.

THE COURT: Well, I'm not going to go look for it. You're going to separate it out and present that stuff the same way that Mr. Cullen, or Mr. Monzack or anybody else appearing before this court would have to do it. You are not going to take --

MR. CHORNEY: Your Honor, on pages --

THE COURT: -- another 18 years while -- settle down and pay attention to what I'm telling you.

MR. CHORNEY: I'm listening, Your Honor.

THE COURT: You are being ordered to separate out on a separate document now, on separate documents, the items that you just represented were inconsistent between Mr. Cullen's billings and billings that Mr. Bertozzi is not even asking this court to consider.

MR. CHORNEY: Yes, Your Honor.

THE COURT: So there's a serious question of what those are worth anyway.

MR. CHORNEY: Yes.

THE COURT: But you made a statement and I'm going to force you to back it up.

MR. CHORNEY: And I have them listed on pages 6, 7, and 8 of this pleading that I gave you.

THE COURT: 6, 7, and 8 of which document now?

MR. CHORNEY: That's on the memorandum, Your Honor.

I listed 20 different discrepancies and I can go over each and every one of them with you in relationship to the exhibits that are in this package that I presented to the court.

THE COURT: You know what? Go right ahead.

MR. CHORNEY: Okay. Would you like this to follow from or not?

THE COURT: I beg your pardon?

MR. CHORNEY: Would you like this to follow from or not?

THE COURT: Is that the only copy of that document --

MR. CHORNEY: No, I have other copies, Your Honor.

THE COURT: What's he looking at now?

MR. CULLEN: I don't know, Your Honor. We've never been served with it. At least I haven't. I don't think it's anything Mr. Donahue or Mr. --

MR. CHORNEY: No, I haven't. Part of the service was done here, but I can't serve it to you without court permission, so I've just tried to present it to the court to try assist and aid them in the process.

MR. CULLEN: This is, again, the point -- he's asking all of us to operate in he blind, as usual, with him. If he's got to go downstairs and copy them and produce them so that we all have the opportunity to follow his

articulation on the criticism, that's fine. But we can't sit here and watch him go through the criticisms without even having the documents before us.

MR. CHORNEY: Your Honor, Mr. Cullen was served a copy of this -- these 20 discrepancies or inconsistencies, as well as Your Honor has been served with it. That service was made with the first circuit show cause order. One copy went to Your Honor, one copy to Mr. Cullen, one copy went to Mr. Bertozzi, one copy went to the U.S. Trustee.

So for him to say he has no knowledge of it, I think either he hasn't read what has come to him or he's just not telling the truth.

MR. CULLEN: Your Honor, there's a separate situation. Mr. Chorney has filed separate documents with the Court of Appeals, which were incorporated in four books.

THE COURT: Hold it, please. You know what? This case hasn't changed. People don't change either. And I don't think it's fair to the people who are expecting to have their matters heard this morning while we go through this exercise.

I'm going to interrupt the Cumberland Investment Corporation proceeding. I'm going to finish the balance of the calendar. Since Mr. Bertozzi has made his presentation on his fee application, I'm going to excuse him.

How long are you going to be away, Mr. Bertozzi, in

case we need you back?

MR. BERTOZZI: I'll be back on Monday, Your Honor.

THE COURT: Okay.

MR. DONAHUE: May I just make a suggestion, Your Honor?

THE COURT: Your Honor -- and my office filed a pleading requesting 30 days to file comments on the fee applications and, hopefully, by that time we can certify the final report to Your Honor.

At that point, I think Mr. -- it might be an appropriate time if the court would just take his pleading today, take the instant fee applications under advisement, because my office has already asked for a few more days to look at them ; allow Mr. Bertozzi to do his travel and I think the appropriate context might be the final hearing on the final report, and you can certainly take Mr. Chorney's submission and for whatever weight you wish to give it and then we'll have the final account and I assume there might be further review of that.

But it would seem at this point, this is merely an intermediate dance, if you will, Your Honor. And what we really need to do is to get to the final account, because as to the pending fee apps, it doesn't affect the unsecured -- and going back to the standard --

THE COURT: I understand.

MR. DONAHUE: So if we could just continue the pending fee apps to the final -- because nobody's going to get a penny ways until you prove the final account.

So I think what we're doing, Your Honor, is simply just playing into that waste of time scenario that has happened in the past in this case.

So I move to continue the matter, Your Honor, to the hearing on the final account.

THE COURT: Okay. Does anybody find anything wrong with Mr. Donahue's suggestion? Then I guess I'm looking at --

MR. CULLEN: I'm fully in favor, Your Honor.

MR. BERTOZZI: I'm in favor, Your Honor.

MR. MONZACK: So am I, Your Honor.

THE COURT: Mr. Chorney, what's your --

MR. CHORNEY: Your Honor, I'm in favor also, but what I would like to do in the interim is have my right to due process to have discovery from both Mr. Cullen and Mr. Bertozzi concerning the fee applications in order to properly prepare myself for any hearing involving them.

UNIDENTIFIED: Objection.

MR. CHORNEY: Besides the information that's being presented to the court, there's also questions being presented concerning the 364 agreement going back to December of 1990, and whether or not any fees or other monies have

been paid out in relationship to that agreement which was signed by Your Honor on December 12 or 13th of 1990. It involves some $400,000 that were borrowed by Mr. Cullen from the estate for administration of the estate.

THE COURT: You know, you're kind of getting out in a very -- kind of walking away from the standing issue that I'm trying to stick to.

You want to reopen this whole case, as I understand it. You want to start doing discovery now. I think we've -- I'm satisfied and -- that all of your complaints -- every single complaint that you raised over the period since the filing of this case, has been hashed, rehashed and done with. You refuse to let go.

If you think you're going to start doing discovery now, based on an order that I gave you to point out to the court these discrepancies between Mr. Bertozzi's billing that he doesn't have records of -- if you have them and he doesn't, something's really wrong here.

MR. CHORNEY: They're part of this package, Your Honor.

THE COURT: Okay. Well, I'm going to grant the U.S. Trustee's request for a 30-day continuance to review all these applications and including your pleadings.

But during that same period of time, I'm instructing you to in writing -- you know, you can't just

stand there and start to talk about things that happened and letters you wrote and transcripts that may be here and there -- I'm not going to let you do that anymore. It's much too late to start doing that, but we're going to do it.

So what's 30 days from now, Cindy?

THE CLERK: April 24th.

THE COURT: April 24.

MR. BERTOZZI: I think that's the week I'm court excused, Your Honor. So the week before or after. Your Honor's pleasure.

THE CLERK: May 8th.

THE COURT: Okay. May 8th. Is everybody going to be here? In town, that is?

(No audible response.)

THE COURT: All right. Ten days prior to May 8th, which is what date?

THE CLERK: Ten days prior? April 28th.

THE COURT: April 28th I want to have your report, Mr. Chorney, filed with the court and appropriate notices to everybody here who's interested. I don't know if you have a different service list. That's your issue.

But the people who are here are going to be entitled to see what you file and it's going to specifically detail the items of inconsistency or discrepancies, as you put them --

MR. CHORNEY: Yes, Your Honor.

THE COURT: Between Bertozzi and Mr. Cullen.

MR. CHORNEY: Your Honor, I have those with me and I can give them to the people that are currently here. It's all contained in this document.

THE COURT: You know what you've been ordered to do. I'm not going to go further than that as far as telling you how to do it, what color paper it goes on or anything else.

MR. CHORNEY: That's fine, Your Honor.

THE COURT: Okay.

MR. CHORNEY: Thank you.

THE COURT: All right. We've put this away at least for another 40 days, whatever.

MR. BERTOZZI: Thank you, Your Honor.

MR. CULLEN: Thank you, Your Honor.

(Proceeding concluded at 11:35 a.m.)

I, CHRISTINE FIORE, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Christine Fiore

_______________________________ April 4, 2008

Christine Fiore