IN THE UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

IN RE: CUMBERLAND INVESTMENT CORPORATION

CA. No. 07-8038

APPELLANT, HAROLD F. CHORNEY

RESPONSE TO SHOW CAUSE MOTION

AS TO WHY APPEAL

SHOULD NOT BE DISMISSED

ENTERED 2/28/08

HAROLD F. CHORNEY, PRO SE
16 SPRING DRIVE
JOHNSTON, R.I. 02919
401 934-0536

DATED: MARCH 13, 2008

**UNITED STATES COURT OF APPEALS**

**FOR THE FIRST CIRCUIT**

**IN RE: CUMBERLAND INVESTMENT CORPORATION** **CA NO. 07-8038**

## MOTION TO SHOW CAUSE WHY THIS APPEAL SHOULD NOT BE DISMISSED

Now comes Harold F. Chorney, pro se, a petitioner with property interests and an interested party in the above captioned matter and requests this court not dismiss this appeal and that a 'de novo' review be performed on the merits of this case.

Petitioner states for cause the reasons why this appeal should not be dismissed in the attached MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SHOW CAUSE WHY THE APPEAL SHOULD NOT BE DISMISSED.

Respectfully Submitted

Harold F. Chorney

Harold F. Chorney, Pro Se
16 Spring Drive
Johnston, R.I. 02903
(401) 934-0536

**CERTIFICATION**

I hereby certify that on this 13th day March 2008, I sent a copy of the above by first class mail to the following:

Arthur N. Votolato, Judge
380 Westminster Mall
6th Floor
Providence, R.I. 02903

Edward J. Bertozzi, Jr.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, R.I. 02903

Jason D. Monzack
Kirshenbaum & Kirshenbaum
888 Reservoir Avenue
Cranston, R.I. 02910

Leonard DePasquale, AUST
Office of the U.S. Trustee
10 Dorrance Street
Providence, R.I. 02903

John F. Cullen
Law Office of John F. Cullen, PC
17 Accord Park Drive, Ste 103
Norwell, MA 02061

United States Trustee
Thomas P. O'Neill, Jr. Federal Office Bldg.
10 Causeway Street Room 472
Boston, MA 02222-1043

Harold F. Chorney

HAROLD F. CHORNEY

**UNITED STATES COURT OF APPEALS**

**FOR THE FIRST CIRCUIT**

**IN RE: CUMBERLAND INVESTMENT CORPORATION** **CA NO. 07-8038**

# PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SHOW CAUSE WHY THIS APPEAL SHOULD NOT BE DISMISSED

Now comes Harold F. Chorney, pro se, a petitioner with property interests and an interested party in the above captioned matter and requests this court 'de novo' rule on the merits of this appeal.

The November 3, 2004, Court Order was not itself appealed to the District Court or the Bankruptcy Appellate Panel, however the underlying court order, attached to and incorporated as part of the November 3, 2004, Court Order (See Appendix pages E-5 to E-7) was appealed to the District Court and then to the Court of Appeals for the First Circuit and is a final order. This underlying order, dated July 3, 1992, is continuously cited and relied upon by various institutions and parties.

Petitioner argues against dismissal of his motion by appealing to the heart of the court in the spirit of the extraordinary writs of coram nobis and coram vobis embodied in Rule 60(b).

Petitioner has been denied access to the Bankruptcy Court by orders that were based on either ignorance of or presentation to said court of fraudulent misrepresentations as outline below.

Those orders were infected and that infection could only be removed by seeking remedy by a direct appeal to this court for jurisdiction.

If this court does not accept jurisdiction of this matter, petitioner has no forum available to correct wrongs and injustices in this matter since the Bankruptcy Court has denied petitioner access to that court for relief. Petitioner appeals to the heart of this court for relief.

Petitioner will show that a 'fraud upon the court' resulted when the Circuit court relied upon spurious information in the underlying court order (See E-5 to E-7) resulting in a $200,000 fine to the Petitioner, in a decision of the United States Court of Appeals for the First Circuit in case No. 93-1094, dated September 23, 1993.

Petitioner avers that substantial interests of justice are involved in that the underlying court order contains false and fraudulent claims thus making null and void the November 3, 2004, court order which relies on that underlying order.

To further argue these points, An Appendix Supplement, Appendix Part III, is presented to this court. This Supplement contains:

1. EXHIBIT W, AUGUST 31, 1991 TO DECEMBER 22, 1993, "MISSING BILLING OF MR. BERTOZZI
2. EXHIBIT X, DECEMBER 12, 1990, COURT ORDER.
3. EXHIBIT Y, SEPTEMBER 23, 1993 FIRST CIRCUIT DECISION IN CASE No. 93-1094

## I. BACKGROUND:

Since the inception of the bankruptcy, Petitioner has sought to obtain an accounting of the assets of the estate, those seized by the Trustee, those sold and those remaining. In addition, Petitioner has sought to obtain an accounting of the proceeds from the sale of these assets as well as to account for some "missing assets." Furthermore Petitioner has sought to obtain an accounting of estate expenses and the "professional" time billed in this case.

During the course of the bankruptcy, questions arose concerning billing practices and other practices of the Examiner and Trustee. In the Brief of Appellant in Ca. No. 92-1780, Appellant placed Exhibits indicating the Examiner Double Billing practices. An excerpt of this brief includes Judge Votolato talking to the Examiner, Michael Weingarten:

> Court: I would just say a matter of prudence and, you know, so that we won't be—you won't be facing the same accusation the next time. "Here are my damn records," you know. Do we need this in writing, this Order?" May 7, 1991 R. 64

Yet, a July 3, 1992, Court Order (dated the 3rd day of July, 1991, was signed by Arthur N. Votolato, Jr. U.S. Bankruptcy Judge. It involved the exclusion of the Petitioner questioning the Examiner's pending fee application (See E-7).

Subsequently, the United States Court of Appeals for the First Circuit in Ca. No. 93-1094, ruled on APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND in Harold F. Chorney Appellant, v. Michael Weingarten, Et Al., Appellee. Harold F.

Chorney on brief pro se, and Edward J. Bertozzi, and Edwards & Angel, on brief for appellee John F. Cullen, Trustee, on September 23, 1993.

The circuit court ruled, "On the basis of time records submitted by the trustee, the examiner and Eastland Bank, showing "expenses directly attributable to unnecessary litigation and/or extra judicial work generated by Mr. Chorney," the court ordered Chorney to pay $200,000 to the trustee as "partial reimbursement for the deliberate post-petition damage he has done to creditors." (See E-303 to E-304.)

The time records referred to in the First Circuit court ruling of September 23, 1993, include Appellant Exhibit U and Exhibit V, concerning the Trustee's Billing; and Exhibit W, concerning the "Missing" Bertozzi Billing.

It is sixteen years later and this instant action was precipitated by the Petitioner questioning the pending fee applications of Mr. Cullen and Mr. Bertozzi. Mr. Bertozzi represented both the Examiner, Mr. Weingarten and Chapter 11 Trustee, Mr. Cullen and sometimes simultaneously represented both of them despite the fact that this is contrary to statute. (See Appendix III, Exhibit W, the "MISSING" BILLING OF MR. BERTOZZI, page E-267 for one of the Weingarten billings.) The Trustee according to 11 U.S.C. §327 (f) may not employ a person that has served as examiner in the case (See Petitioner's Brief, pages 57-60.) Mr. Bertozzi and EAPD, represented both the Examiner and the Trustee simultaneously, despite their "specialized expertise" in this area.

## II. DISCUSSION:

Petitioner avers that the underlying court order(s) to the November 3, 2004, Bankruptcy Court Order, are false and have been fabricated to besmirch the character of Petitioner as well as to conceal the billing practices apparently allowed by the bankruptcy court.

**SIGNIFICANCE OF THE SUPPLEMENTAL EXHIBITS**

### A. EXHIBIT X, COURT ORDER, DATED DECEMBER 12, 1990

A court order, was signed by Arthur N. Votolato, on December 12, 1990 Docket entry 224, dated 12/13/1990 states, "Order Granting [206-1] Amended Motion re [196-1 Motion to authorize borrowing pursuant to Section 364(c)(1) and for nunc pro tunc authorization by John F. Cullen. . ." The Order, dated December 12, 1990, involved an Agreement in which both Mr. Bertozzi, signed for Mr. Cullen and attorney Oster signed for Petitioner.

1. According to Paragraph E. on page E-283 of Exhibit X.,

"Eastland previously advanced $75,000 to the Trustee which was used by the Trustee to pay for a portion of the Trustee's Expenses."

2. According to paragraph 2. On page E285 of Exhibit X.,

"The Trustee is hereby authorized to borrow up to $400,000 from Eastland in accordance with the terms and provisions hereof and in accordance with the terms and provisions of the Post-Petition Financing Agreement."

*No accounting of loans made by Eastland to Trustee have been disclosed to Petitioner or to the creditors of the estate of C.I.C.*

3. According to paragraph 10. On page E289 of Exhibit X.,

"The Trustee and Eastland shall establish an escrow account at Eastland into which all advances made by Eastland to the Trustee, and all proceeds from

the sale of Post-Petition Collateral, shall be deposited (the "Escrow Account"). The Trustee shall cause such funds to be distributed in the order and manner as follows: 1) $70,000 to the Examiner and $14,000 to his Counsel to pay previously approved administrative claims; 2) $75,000 plus interest to Eastland to be applied to that portion of the Post-Petition Debt previously advanced to the Trustee; 3) the Trustee's subsequent fees and expenses, and other administrative expenses subject to further order of this court; 4) to Eastland to be applied against the Post-Petition Debt initially to (a) accrued and accruing interest (at a rate set forth in the Post-Petition Financing Agreement, fluctuating as set for the therein), (b) then to all fees and expenses provided for in the Financing Agreement, and (c) then to the unpaid principal balance of the Post-Petition Debt; 5) the remaining proceeding will be held in the Escrow Account subject to further order of this Court."

*No accounting of the Post-Petition distribution of funds to the Examiner or to Mr. Bertozzi has been made. The lack of accounting can only beg the question as to whether Mr. Bertozzi or others have already received some remuneration from this fund for their services.*

The following accounting was listed in the STATEMENT OF FACTS, in Appellee's Brief in Ca.No. 02-1976:

"This case was originally filed as a Chapter 11 proceeding on November 8, 1989. On August 15, 1990, John F. Cullen ("Cullen) was appointed Chapter 11 Trustee of the Debtor. In December of 1990, Cullen borrowed certain funds from Eastland Bank pursuant to his Motion for Permission to Borrow in accordance with 11 U.S.C. §364(c)(1) dated October 26, 1990 and the Bankruptcy Court's Order dated December 12, 1990 (the "Borrowing Order"). The Borrowing Order authorized Cullen to borrow up to $400,000.00 from Eastland Bank to p[ay Chapter 11 administrative expenses. The Borrowing Order provided that Eastland Bank's loan to Cullen was secured by a first priority security interest having priority over all other liens, claims and encumbrances. Eastland subsequently failed, and Fleet National Bank ("Fleet") became the holder of Cullen's $400,000.00 Promissory Note and the claim related thereto.

In 1994, this case was converted to a proceeding under Chapter 7 of the Bankruptcy Code and Jason Monzack was appointed Chapter 7 Trustee."

Pursuant to a certain Insured Deposit Purchase and Assumption Agreement (the "Agreement) dated December 11, 1992 between FDIC and Fleet, the FDIC paid to Fleet certain sums in connection with Fleet's prior claim in this proceeding. Additionally, pursuant to a Bankruptcy Court's Order of April 14, 1998, Fleet was paid the sum of $23,500.00 in full settlement of any claim of Fleet. The FDIC was then the sole remaining secured creditor in this Chapter 7 proceeding. In 1999, the FDIC assigned its secured claim to Republic. . . . . .The Trustee presently holds the sum of $224,748.00 (the "Secured Creditor Fund") for the benefit of secured creditors following the auctions of the coins and stamps by Spink. As the sole remaining secured creditor, Republic is entitled to the Secured Creditor Fund as previously ordered by the Bankruptcy Court."

Appellee's Brief, dated January 13, 2003, also cited the Order of Judge Votolato on July 2, 1992 and further states that the appeal "can serve no legitimate purpose....and ...is an utter waste of this Court's time and resources."

Yet, the need for an independent accounting of the estate is accentuated by the inconsistencies shown at all junctures of this case and especially revealed by Exhibit W, the "MISSING" BILLING OF MR. BERTOZZI.

**B. EXHIBIT W, AUGUST 31, 1991 TO DECEMBER 22, 1993, "MISSING" BILLING OF MR. BERTOZZI.**

This group of billings by EAPD (Exhibit W, pages E-256 to E-281) for the Examiner and Trustee was to the best of Petitioner's knowledge given to the Petitioner, Harold F. Chorney and to court appointed officials Examiner, Michael Weingarten; Chapter 11Trustee, John F. Cullen; John Boyajian, attorney for C.I.C. Matthew McGowan, attorney for the Creditors

Committee as well as the clerk of bankruptcy court. Yet no one except Petitioner has come forward with this group of billings.

*The same lack of acknowledgement has occurred with the Cullen billing from 9/28/90 to 9/25/91 (E-247 to E-255) being different from (E-226 to E-235). According to the Certificate of Service, dated 9/26/91, Kathleen T. Ong, Esquire, signed on behalf of Cullen & Resnick, the service to Jonathan F. Oster, attorney for Petitioner; Edward J. Bertozzi, EDWARDS & ANGEL, attorney for the Chapter 11, Trustee, John F. Cullen; and the United States Trustee, 472 O'Neill Federal Office Building, 10 Causeway Street, Boston, Massachusetts 02222.*

*Despite the fact that Mr. Bertozzi and Edwards and Angel and the U.S. Trustee received the 9/26/91 Cullen billing, only Petitioner has come forward with this billing, despite being gagged by the bankruptcy court.*

## C. EXHIBIT Y, SEPTEMBER 23, 1993 FIRST CIRCUIT DECISION IN CASE No. 93-1094

The history of the Cumberland Investment Corporation requires a 'de novo' look at the entire case and the related criminal case. It involves issues beyond just credibility. Exhibit Y contains language that "Chorney's allegation were "totally unsupportable", "fabricated" and "out of touch with reality" and are mostly predicated on "motions brought by the trustee, examiner, and Eastland seeking orders directing Chorney to cooperate or refrain from interference with the bankruptcy process." (See E-300.)

**INCONSISTENCIES IN BILLING OF PROFESSIONALS:**

Petitioner cannot be silent and cooperate with one lie after another. It is about 15 years since the September, 1993 decision and this case has not been closed. The court and Chapter 7, Trustee (1.) continue to piecemeal reveal professional billings and other information in this case, while blaming Petitioner for interfering with closing this case.

A comparison of the billings show inconsistencies between the Cullen and Bertozzi billings on both the billings produced by Mr. Bertozzi in Exhibit D, as well as the billing allegedly lost by Mr. Bertozzi in Exhibit W. Petitioner compared the Cullen Billing dated October 26, 2007, (See Exhibit T, E-212 to E-238) with the billings of Cullen's attorney, Edward Bertozzi, both the August 1990 to August 1991 , (See Exhibit D, E-23 to E-66) and the August 1991 to November 29, 1993, (See Exhibit W, the "Missing" Billing, E256-E281).

Listed below are some examples of these billing inconsistencies:

1. The Cullen billing, dated 6/17/91, shows a conference between Cullen and Bertozzi while the Bertozzi billing for the same date shows the meeting between Bertozzi and Weingarten.

(1.)The Chapter 7, Trustee, Jason Monzack has been the Trustee in two other cases, similar to the Cumberland Investment Corporation case involving tangible assets. Each case has lasted an inordinate amount of time while elderly debtors were accused of interfering with the administration of the case. Those cases are the Felix Deweldon case and the Tilden, Thurber case.

2. The Cullen billing, date 7/11/91, shows a meeting between Cullen and Bertozzi while the Bertozzi billing for the same date shows the meeting between Bertozzi and Baverstam (employed by Examiner.)

3. The Cullen billing, dated 7/19/91, shows a conference between Cullen and Bertozzi while the Bertozzi billing for the same date shows the conference between Bertozzi and Baverstam.

4. The Cullen billing, dated 7/23/91, shows a conference between Cullen and Bertozzi while the Bertozzi billing for the same date shows no conference but a letter sent to Cullen by Bertozzi.

5. The Cullen billing, dated 7/24/91, shows a conference between Cullen and Bertozzi while the Bertozzi billing for the same date shows no conference between Cullen and Bertozzi.

6. The Cullen billing, dated 7/30/91, shows a meeting between Cullen and Bertozzi while the Bertozzi billing for the same date shows the meeting to be between Bertozzi and Weingarten.

7. The Cullen billing, dated 8/1/91, shows a meeting between Cullen and Bertozzi while the Bertozzi billing of the same date shows the meeting between Bertozzi and Weingarten. Although Mr. Resnick was there, there is no indication that Mr. Cullen was present according to the Bertozzi billing.

8. The Cullen billing, dated 8/2/91, shows a conference between Cullen and Bertozzi while the Bertozzi billing of the same date shows the conference was between Mr. Bertozzi and Ms. Serreze, then attorney for Eastland Bank and subsequently U.S. Trustee in Providence, R.I.

9. The Cullen billing, dated 8/5/91, shows Cullen researching issues with Bertozzi while the Bertozzi billing of the same date shows Mr. Bertozzi researching the issues, with no Cullen present.

10. The Cullen billing, dated 8/6/91, shows Cullen in a conference with Bertozzi and Silverstein while the Bertozzi billing of the same date shows Mr. Bertozzi in a conference with Mr. Silverstein without Mr. Cullen being present.

11. The Cullen billing, dated 8/15/91, shows Cullen in a conference with Bertozzi and McGown while the Bertozzi billing of the same date shows Mr. Bertozzi in a conference with Mr. Weingarten and Mr. Resnick.

12. The Cullen billing, dated 8/22/91, shows Cullen and Bertozzi in a conference while the Bertozzi billing of the same date shows Bertozzi in a conference with a coin claimant.

13. The Cullen billing, dated 8/26/91, shows Cullen in a conference with Bertozzi while the Bertozzi billing of the same date shows Bertozzi in a conference with Baverstam.

14. The "lost Bertozzi billing", dated 9/3/91, shows Bertozzi in a conference with Cullen while the Cullen billing of the same date shows no conference between Bertozzi and Cullen.

15. The "lost Bertozzi billing", dated 9/5/91, shows Bertozzi in a conference with Cullen and Weingarten while the Cullen billing of the same date shows no conference between Bertozzi and Cullen.

16. The "lost Bertozzi billing", dated 9/30/91, shows Bertozzi in a conference with Cullen while the Cullen billing of the same date shows no conference between Bertozzi and Cullen.

17. The "lost Bertozzi billing", dated 11/12/91, shows Bertozzi in a conference with Cullen while the Cullen billing of the same date shows no conference between Bertozzi and Cullen.

18. The "lost Bertozzi billing", dated 12/6/91, shows Bertozzi in a conference with Cullen while the Cullen billing of the same date shows no conference between Bertozzi and Cullen.

19. The "lost Bertozzi billing", dated 2/13/92, shows Bertozzi in a conference with Cullen while the Cullen billing of the same date shows no conference between Bertozzi and Cullen.

20. The "lost Bertozzi billing", dated 2/10/92, shows Kumins served a motion to examine Chorney while the Cullen billing of the same date shows Cullen preparing a motion for rule 2004 Exam with Bertozzi.

## III. ARGUMENT:

There are numerous inconsistencies in the billings of Mr. Bertozzi and Mr. Cullen as evidenced above. There are "missing" billings and what appears to be fabricated billings presented to the court for approval some fourteen (14) years after the services of these "professionals" have been performed. There is no mention of anyone being paid as a result of the December 12, 1990 Agreement. (See Exhibit X)

Revealed from the missing Bertozzi billings is that Mr. Bertozzi met with Mr. Posner, AUSA, the prosecutor of the Cumberland Investment Corporation criminal case on numerous occasions, both related to civil and criminal cases. The allegations of Petitioner, denied by officers of the bankruptcy court, that Mr. Posner was a party to the civil bankruptcy and was involved with Mr. Bertozzi in drawing up court orders is bolstered by the 2/13/92 billing, "conference with Posner on Chorney orders" and the 9/17/92 billing, "conference with Posner; review indictment…" (See page E-15, excerpt from the January 8, 1992 Hearing where Judge Votolato states,

> "I'll leave the amended language to the parties, the U.S. Attorney, the Trustee, and Mr. Chorney…."

Revealed from the Cullen Billings is the fact that numerous

transcripts and videos concerning the assets of Cumberland Investment Corporation were never produced for the Bankruptcy Court Order, dated May 17, 1995 (See E148-150, *a collation error in Appendix Part II, has pages E141-143 following E148 and before E150*), or for the criminal case CR 92-099P.

The billing records of the Trustee, John F. Cullen and his Attorney, Edward Bertozzi indicate numerous fees directly related to investigating, and prosecuting Chorney's criminal case and not the administration of the bankruptcy. Still undisclosed is any funding provided to "professionals" in the C.I.C. case by Eastland Bank or their successors.

## IV. CONCLUSION

Fraud committed by officers of the court is a wrong against institutions set up to protect and safeguard the public. There is no doubt that the Trustee, the Examiner and their attorneys, Edward Bertozzi and EAPD, acted contrary to statue 11 U.S.C.§327(f).

The fact that the court appointed officials have double billed the estate of Cumberland Investment Corporation and has presented spurious billings is irrefutable. The fact that a complete accounting of the assets of the estate has not been forthright and has been tangled in secret agreements is also irrefutable. The fact that court appointed officials have not produced discovery favorable to the accused in the criminal case is irrefutable.

<u>The untimely request for relief is justified and in the public interest.</u>

In sum, a prudent man would now have to question the tactics used to drag cases out year after year and the methods used to silence vocal critics, like the Petitioner. A prudent man would conclude that other claims and information provided by these same court appointed officials are now questionable at best and presumed "unreliable".

Should this court believe that the Petitioner's Appeal, In Re: Cumberland Investment Corporation is, as claimed by bankruptcy court officials to be frivolous and/or was presented to interfere with or obstruct the administration of this nineteen year old case, as stated in the July 3, 1992 Order, then by all means the appeal should be dismissed.

However, should this court believe that the underlying claims of the July 3, 1992, Court Order, are not true and that the pleadings of the Petitioner are constructive and were presented to aid the administration of this nineteen year old case, then the appeal should be ruled upon.

Respectfully Submitted

Harold F. Chorney

Harold F. Chorney, Pro Se
16 Spring Drive
Johnston, R.I. 02903
(401) 934-0536

# CERTIFICATION

I hereby certify that on this 13th day March 2008, I sent a copy of the above by first class mail to the following:

Arthur N. Votolato, Judge
380 Westminster Mall
6th Floor
Providence, R.I. 02903

Edward J. Bertozzi, Jr.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, R.I. 02903

Jason D. Monzack
Kirshenbaum & Kirshenbaum
888 Reservoir Avenue
Cranston, R.I. 02910

Leonard DePasquale, AUST
Office of the U.S. Trustee
10 Dorrance Street
Providence, R.I. 02903

John F. Cullen
Law Office of John F. Cullen, PC
17 Accord Park Drive, Ste 103
Norwell, MA 02061

United States Trustee
Thomas P. O'Neill, Jr. Federal Office Bldg.
10 Causeway Street Room 472
Boston, MA 02222-1043

Harold F. Chorney
HAROLD F. CHORNEY