# DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF RHODE ISLAND

**HAROLD F. CHORNEY**
**Appellant**

**V.**

**JASON D. MONZACK**
**JOHN F. CULLEN**
**Appellee**

**C.A. No.: 08-189ML**

# BRIEF OF APPELLEE, JASON D. MONZACK, in his capacity as Chapter 7 Trustee of Cumberland Investment Corporation

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** .......... i

**SUMMARY OF CHAPTER 7 TRUSTEE'S ARGUMENT** .......... 1

**ARGUMENT** .......... 1

I. Standard of Review .......... 1

II. Introduction: Chorney's Prior Conduct .......... 1

III. Chorney's Present Appeal .......... 4

IV. Chorney Lacks Standing .......... 4

V. The Issues Which Chorney Seeks to Raise on Appeal Have Been Previously Decided By Prior Final Orders and Judgments .......... 6

**CONCLUSION** .......... 7

**ADDENDUM** .......... 9

# TABLE OF AUTHORITIES


Page

11 U.S.C. §105(a); ........ 4

11 U.S.C. §726(a) (6); ........ 5

*Casco Bay Lines, Inc.*, 25 B.R. 747, 753 (Bankr. App. 1st Cir. 1982))........ 1

*Casco Northern Bank, N.A. v. DN Associates,* 160 B.R. 20, 22 (D.Me. 1993)........ 1

Chorney v. Weingarten, 7 F.3d 218, 1993 WL 372751 (C.A. 1 (R.I.))........ 2

*Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.),* 151 F.3d 605, 607 (7th Cir. 1998)........ 5

In re Cumberland Investment Corp., Bk No. 89-11051, slip op. at 1-2 (Bank D.R.I. July 3, 1991)........ 2, 3

In re Cumberland Investment Corp., Bk No. 89-11051, slip op. at 1-2 (Bank D.R.I. July 2, 1992), aff'd, 7 F. 3d 218 (1st Cir. 1993), cert denied, 510 U.S. 1200 (1994)........ 3

In re Cumberland Inv. Corp., 2003 WL 214357 (1st Cir.), *cert denied,* 123 S.Ct. 579 (2003)........ 3, 6

In re: Cumberland Inv. Corp., 2004 WL 2616318........ 4, 7

In re *DN Associates,* 3 F.3d 512 1st Cir. 1993)........ 1

*In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir. 1987)........ 5

In re Great Road Serv. Ctr., Inc., 304 B.R. 547 (1st Cir. BAP 2004)........ 5, 7

*Mayfield v. Collins,* 918 F.2d 560 (5th Cir. 1990)........ 4

*Prebcor v. Collins,* 143 F.3d 1 (1st Cir. 1998)........ 1

*Spenlinhauer v. O'Donnell,* 261 F.3d 113, 117 (1st Cir.2001);........ 5

## SUMMARY OF CHAPTER 7 TRUSTEE'S ARGUMENT

Harold F. Chorney ("Chorney") lacks standing to appeal as the challenged order denying Chorney's motion to clarify first and final application for fees and expenses of Edwards Angell Palmer & Dodge LLP ("Edwards & Angell") and the awarding of fees and expenses to Edwards & Angell does not directly and adversely affect Chorney's pecuniary interests. Chorney is not entitled to receive any funds from the subject bankruptcy estate; therefore, any increase or decrease in the amount awarded to Edwards & Angell will not affect Chorney. The remaining issues which Chorney seeks to raise on appeal have been previously decided by prior final orders and judgments.

## ARGUMENT

### I. Standard of Review

Appellee Jason D. Monzack contends that Chorney does not have standing to challenge the subject bankruptcy court order. In addition, Appellee contends that all issues, other than the fee application of Edward & Angell, have been previously decided by prior final orders and judgments. If Chorney has standing to challenge the fee award to Edwards & Angell, then abuse of discretion is the applicable standard of review. See Prebcor v. Collins (In re I Don't Trust), 143 F.3d 1 (1st Cir. 1998) (per curiam). In In re DN Associates, 3F.3d 512, (1st Cir. 1993) the Court stated that

> "When we scrutinize factual determinations and discretionary judgments made by a bankruptcy judge, such as may be involved in calculating and fashioning appropriate fee awards, we give considerable deference to the bankruptcy court…This observation is a reiteration of what Judge Brody noted in his affirmance of the instant bankruptcy court decision that [such] courts are traditionally granted broad discretion in determining reasonable fee awards." Casco Northern Bank, N.A. v. DN Associates, 160 B.R. 20, 22 (D.Me. 1993) (citing In re Casco Bay Lines, Inc., 25 B.R. 747, 753 (Bankr. App. 1st Cir. 1982))."

### II. Introduction: Chorney's Prior Conduct

One cannot fully comprehend Chorney's present appeal without taking into consideration his past conduct. A sampling of how Chorney's conduct in this case has been characterized by this and other courts follows:

In its July 3, 1991 Order denying Chorney's motion to hold examiner in contempt, the Bankruptcy Court stated in part that

> "...Chorney has deliberately and continuously action in bad faith to obstruct and to hinder the efficient administration of the estate, which action has been very damaging, expense-wise, to the estate and it creditors..."

In its July 2, 1992 Order entered after the bankruptcy court's hearing to determine whether Chorney should be "adjudged in contempt and sanctioned for....continuous, deliberate, and unjustified interference with the orderly progress of this bankruptcy case" the Bankruptcy Court stated in part that

> "...In prior proceedings we have found that Chorney has, inter alia, filed frivolous pleadings, willfully interfered with and obstructed the administration of the case, and generally and in bad faith abused the bankruptcy process, causing the estate and its creditors significant economic harm.... See In re Cumberland Investment Corp., BK No. 89-11051, slip op. at 1-2 (Bankr. D.R.I. July 3, 1991). Our July 3, 1991 order ...clearly expressed the Court's exasperation with Mr. Chorney's conduct..."

and that there

> "... was unfortunately an already too familiar pattern of obstructionist behavior by Mr. Chorney. For example...many frivolous pleadings were filed and extensively litigated, with the intent and effect of impeding the administration of an estate already left in shambles by Chorney...."

The Court then went on to

> "...adjudge Harold Chorney to be in continuous, willful contempt, and order him to pay $200,000.00 to the Trustee, as partial reimbursement for the deliberate post-petition damage he has done to creditors..."

The First Circuit's September 23, 1993 non published per curiam opinion, Chorney v. Weingarten, 7 F.3d 218, 1993 WL 372751 (C.A. 1 (R.I.)), affirmed this Court's affirmance of the July 2, 1992 bankruptcy court order finding Mr. Chorney in civil contempt. The First Circuit's opinion was issued by then Chief Judge Breyer together with Circuit Judges Selya and Boudin. The First Circuit opinion relied on the bankruptcy court's characterization of Mr. Chorney's conduct including that

> "...many frivolous pleadings were filed and extensively litigated, with the intent and effect of impeding the administration of an estate already left in shambles by Chorney. ...The most damaging consequences of Chorney's incomprehensible behavior, however, is the incredible amount of needless expense that has been

> heaped upon the estate, and ultimately, of course, upon creditors. ....All of this waste has been caused unnecessarily by Harold Chorney."

and that

> "...Chorney's brief here denies the accuracy of the judge's factual conclusions and argues that he is the victim of retaliation for his criticisms of improprieties by the judge, trustee and examiner. In support of his denials and blame shifting, however, he points only to previous appellate briefs in this court and elsewhere which recite the same conclusions and to selected excerpts from the record. ....the material he offers barely provides even a glancing basis for his factual denials and no concrete support for his accusations. The selectivity of his citations, incoherent or indistinct purposes for many record references, and his repeated blurring of temporally distinct events, only serves to confuse and obfuscate the issues."

On November 3, 2004 the Bankruptcy Court's Order stated in part that

> "...Chorney's hyperactivity and ludicrous conduct throughout this case is marked by his incessant acts of bad faith and abuse of the system from the inception of this bankruptcy in 1989. Very early on, it was determined that "Chorney has deliberately and continuously acted in bad faith to obstruct and to hinder the efficient administration of the estate, which action has been very damaging, expense-wise, to the estate and its creditors." *In re Cumberland Investment Corp.,* BK No. 89-11051, slip op. at 1-2 (Bankr.D.R.I. July 3, 1991). As a result, Chorney was prohibited from intervening or "otherwise participat[ing] in proceedings relating to sales or other disposition of estate assets." *Id.* In addition, in 1992 a civil contempt sanction was imposed in the amount of $200,000.00 against Chorney on account of his bad faith and abuse of the bankruptcy process. *In re Cumberland Investment Corp.,* Bk No. 89-11051, slip op. at 1-2 (Bankr. D.R.I. July 2, 1992), aff'd, 7 F. 3d 218 (1st Cir. 1993), cert denied, 510 U.S. 1200 (1994). This sanction was calculated to reimburse the estate for just a part of the unnecessary expense occasioned by Chorney's aberrant behavior. *Id.* at 4. Obviously undeterred by this sanction, Chorney continues, some twelve years later, to file frivolous pleadings which add expense and delay in the closing of this 1989 case.
>
> By filing the instant motion and requests for admissions, Chorney has directly violated the 1991 injunction. Additionally, in January 2002, Chorney filed a similar request seeking an accounting of assets, which was denied on March 14, 2002, based on lack of standing and the 1991 injunction order. ... That decision was sustained on appeal. See *In re Cumberland Inv. Corp.,* 2003 WL 214357 (1st Cir.), *cert denied,* 123 S.Ct. 579 (2003). Finally, in an effort to leave no stone unturned, I asked the United States Trustee to review the Trustee's Accounting to date to determine whether any of Chorney's allegations have merit. The United

> States Trustee responded in late August 2004 stating that she was satisfied with the Trustee's Accounting. .... .
>
> Accordingly, because these issues have been long ago decided against Mr. Chorney, because he lacks standing, and because he is enjoined from participating in this case regarding the disposition of assets, the Trustee's request to strike the instant motion and request for admissions are GRANTED.
>
> Also, because the instant filings are frivolous and are hindering the Trustee in performing his duty to conclude this case, it is further ordered that, effectively immediately, the Clerk of Court shall decline to accept any filings from Harold Chorney, unless such filing has first been presented to Chambers and is specifically authorized by the Court for filing. FN1 *See* 11 U.S.C. §105(a); *see also, Mayfield v. Collins,* 918 F.2d 560 (5th Cir. 1990).

In its footnote the Bankruptcy Court added

> "I considered imposing additional monetary sanctions, however, the $200,000.00 contempt sanction remains unpaid and appears to have little deterrent effect on Chorney." See 2004 WL 2616318 (Bkrtcy. D.R.I.)

## III. Chorney's Present Appeal

The Chapter 7 Trustee filed his final report and account to be approved by the U.S. Trustee and the bankruptcy court. Incidental to the filing of the report, John F. Cullen and Edwards Angell Palmer & Dodge LLP filed applications for fees and expenses. In response to these fee requests, Chorney filed his motions to clarify first and final application for fees and expenses of Edwards Angell Palmer & Dodge, LLP and to assist and help the Court concerning the first and final application for fees and expenses of Edwards Angell Palmer & Dodge LLP plus his offer of proof concerning standing. It is the bankruptcy court's approval of the fee of Edwards Angell Palmer & Dodge LLP, the denial of Chorney's motion to clarify and the issue of Chorney's standing that is the subject of Chorney's appeal.

## IV. Chorney Lacks Standing

Whether the bankruptcy court granted the fee application of Edwards Angell Palmer & Dodge LLP in full or denied it in full would not have any affect on the funds Chorney would receive from this bankruptcy estate. He receives nothing in any case. Chorney did not file a proof of claim in this bankruptcy proceeding and therefore does not have the standing of a creditor.

Chorney signed the subject bankruptcy petition as the debtor's President. All the funds in this bankruptcy estate will be paid either for Chapter 7 administrative expenses, Chapter 11 administrative expenses or a small, less than 1% dividend, to unsecured creditors. The funds to be paid to unsecured creditors is not affected by any fee award as pursuant to prior orders of the bankruptcy court, a sum was set apart for the benefit of unsecured creditors, which sum is not increased or decreased by the allocation of funds among administrative claimants. Chorney is not entitled to any funds from the bankruptcy estate.

Bankruptcy standing was considered by the United State Bankruptcy Appellate Panel of the First Circuit in In re Great Road Serv. Ctr., Inc., 304 B.R. 547 (1st Cir. BAP 2004) where the court stated:

> "Bankruptcy standing is narrower than Article III standing. *Spenlinhauer v. O'Donnell*, 261 F.3d 113, 117 (1st cir.2001); *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607 (7th Cir. 1998). Only a "person aggrieved" has standing to challenge a bankruptcy court order; the challenged order must directly and adversely affect the appellant's pecuniary interests. *Spenlinhauer*, 261 F.3d at 117-18. A "person aggrieved" is one whose property is diminished, burdens are increased, or rights are impaired by order on appeal. *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987). Chapter 7 debtors generally lack standing to object to an order concerning distribution of estate assets, because chapter 7 debtors usually lack a pecuniary interest in estate assets: No mater how the estate's assets are distributed by the trustee, no assets will revert to the debtor. 11 U.S.C. §726(a) (6); *Cult Awareness*, 151 F.3d at 607. ...We also reject Great Road's suggestion that it has standing to assert fraud upon the court even though it is not a "person aggrieved" in the usual sense."

Chorney has no pecuniary interest and therefore has no standing. Chorney's lack of good faith is clearly demonstrated by Chorney's attempt to manufacture a basis for standing. In his offer of proof Chorney states that:

> "Despite the fact that Petitioner has presented pleadings concerning the missing assets to this court, the district court and the first circuit, Petitioner had argued his corporate ownership in the seized property and not argued the fact that some of the property seized, of significant value, either belonged to him personally or was non corporate property in which Petitioner has an interest."

Eighteen and a half (18 ½) years after this case was filed Chorney now apparently asserts that he has a personal interest in "some of the property seized." This statement demonstrates that

Chorney will make any statement and make any claim of misconduct that he believes will serve to keep this case open. This statement by Chorney demonstrates that his allegations remain "totally unsupportable", "fabricated", "out of touch with reality" and "frivolous" as characterized by the First Circuit in 1993.

In what can most charitably by characterized as "chutzpah", Chorney, in his statement of the issues, uses as the basis for his "standing as an aggrieved party with a pecuniary interest…" the Bankruptcy Court's July 2, 1992 Order in which the Bankruptcy Court adjudged

> "…Harold Chorney to be in continuous, willful contempt, and order him to pay $200,000.00 to the Trustee, as partial reimbursement for the deliberate post-petition damage he has done to creditors."

In this same order the Bankruptcy Court stated that Chorney

> "…continued, post petition, to advertise fraudulently after both agreeing to and being ordered to desist, …coin and other inventory values were grossly and fraudulently overstated to the Court, the Trustee, and to creditors; many frivolous pleadings were filed and extensively litigated, with the intent and effect of impeding the administration of an estate already left in shambles by Chorney; … The most damaging consequences of Chorney's incomprehensible behavior, however, is the incredible amount of needless expense that has been heaped upon the estate, and ultimately, of course, the creditors. ….All of this waste has been caused unnecessarily by Harold Chorney".

Chorney's claim that his own misconduct serves as the basis for his standing while consistent with Chorney's past behavior, should be dismissed out of hand.

### V. The Issues Which Chorney Seeks To Raise On Appeal Have Been Previously Decided By Prior Final Orders and Judgments

In the Bankruptcy Court decision and order of November 3, 2004, In re: Cumberland Inv. Corp., 2004 WL 2616318, the Court stated:

> …in January 2002, Chorney filed a …request seeking an accounting of assets, which was denied on March 14, 2002, based on lack of standing and the 1991 injunction order. That decision was sustained on appeal. See *In re Cumberland Inv. Corp.*, 2003 WL 214357 (1st Cir.), *cert. denied,* 123 S.Ct. 579(2003)….

The motion filed by Chorney in January, 2002 and denied by the bankruptcy court on March 14, 2002 was titled "motion in objection to abandoning assets without an accountability of assets by the Chapter 7 Trustee, Jason D. Monzack".

On March 8, 2004, Chorney filed his motion "to clarify the class action award from the lawsuit against Christy's Public Auction and require the Chapter 7 Trustee, Jason Monzack, Esq., to provide a complete and detailed accounting of estate assets," a request similar to the January, 2002 motion. See In re Cumberland Inv. Corp., 2004 WL 2616318. The Trustee's motion to strike the 2004 motion was granted

> "…because these issues have been long ago decided against Mr. Chorney, because he lacks standing, and because he is enjoined from participating in this case regarding the disposition of assets…." In re Cumberland Inv. Corp., 2004 WL 2616318.

Notwithstanding the fact that Chorney is appealing the denial of his motion to clarify first and final application for fees and expenses of Edwards Angell Palmer & Dodge LLP, in his statement of the issues he states "the Bankruptcy Court has denied due process to the Petitioner by allowing the unfair taking of his personal property in violation of the Fifth Amendment…" This is another attempt by Chorney to seek an accounting of estate assets, "…issues long ago decided against Mr. Chorney…."

## CONCLUSION

Appellee requests that this Court dismiss this frivolous appeal. The history of this case clearly demonstrates Chorney's pattern of bad faith. But regardless of Chorney's motives, it is clear that Chorney lacks standing and offers nothing but conclusary statements as the basis of his appeal. See In re Great Road Serv. Ctr., Inc., 304 B.R. 547 (1st Cir. BAP 2004). Appellee considered filing a separate motion for sanctions, but decided against it as Chorney's history in this case clearly demonstrates that such sanctions have no deterrent effect on him.

WHEREFORE, Appellee requests that this Honorable Court enter its Order dismissing Chorney's appeal and grant such other and further relief as this Court deems meet and just.

Respectfully submitted,

**/s/ Jason D. Monzack**
Jason D. Monzack, in his capacity as
Chapter 7 Trustee, Appellee
Jason D. Monzack, Esq., #1445
KIRSHENBAUM & KIRSHENBAUM
Attorneys at Law, Inc.
888 Reservoir Avenue
Cranston, RI 02910
(401) 946-3200 Phone
(401) 943-8097 Fax

## CERTIFICATION

I, the undersigned, hereby certify that on the 20th day of August, 2008, I sent a copy of *BRIEF OF APPELLEE, Jason D. Monzack, in his capacity as Chapter 7 Trustee of Cumberland Investment Corporation* electronically to Edward J. Bertozzi, Jr., Esq. at ebertozzi@eapdlaw.com and by first class mail to the U.S. Trustee, Room 910, 10 Dorrance Street, Providence, RI 02903, Gary Donahue, Esq., U.S. Trustee's Office, 10 Causeway Street, Boston, MA 02222 and Harold Chorney, 16 Spring Drive, Johnston, RI 02919.

**/s/ Jason D. Monzack**

# ADDENDUM

| | |
|---|---|
| **A.** July 3, 1991 Order of the Bankruptcy Court for the District of Rhode Island | A-1 through A-2 |
| **B.** July 2, 1992 Order of the Bankruptcy Court for the District of Rhode Island | B-1 through B-5 |
| **C.** Chorney v. Weingarten, 7 F.3d 218, 1993 WL 372751 (C.A. 1(R.I.)) (non published per curiam opinion) | C-1 through C- 10 |
| **D.** November 3, 2004 Order of the Bankruptcy Court for The District of Rhode Island | D-1 through D-4 |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - - - -x

In re: :

CUMBERLAND INVESTMENT : BK No. 89-11051
CORPORATION
Debtor :
- - - - - - - - - - - - - - - - - - - -x

ORDER

On or about May 21, 1991, Harold F. Chorney filed a Motion to Hold Examiner in Contempt, and after notice to interested parties a hearing was held on May 22, 1991, whereat Chorney was represented by counsel who cross-examined Michael Weingarten, the Examiner, and who argued on behalf of Chorney. Based upon the evidence presented at said hearing, and after recalling and upon consideration of the record in this case of numerous earlier hearings attended by Chorney and others, including without limitation the Examiner, the Court finds as a fact and concludes as a matter of law that:

1. Chorney's Motion to Hold the Examiner in Contempt is frivolous and not well founded;

2. Chorney has deliberately and continuously acted in bad faith to obstruct and to hinder the efficient administration of the estate, which action has been very damaging, expense-wise, to the estate and its creditors;

3. These findings as to abuse of the process apply as well to Gerald Aubin.

Based on the entire record in this case, it is ORDERED:

1. That Chorney's Motion is DENIED;

2. That, henceforth, Chorney and Aubin will no longer be permitted to intervene or otherwise participate in proceedings relating to sales or other disposition of estate assets, and are not entitled to any notice other than that received by general creditors;

3. Any orders previously entered by this Court which are contrary to or in conflict with the letter and spirit of this Order, including that certain bench ruling of May 7, 1991 granting, in part, Chorney's Motion to Compel discovery relating to Weingarten's fee application,[1] are VACATED;

4. Because of their willful interference with the orderly and economic administration of this estate, and for their unjustified waste of the time of this Court, and of numerous other parties, Chorney and Aubin are ORDERED TO SHOW CAUSE, on July 25, 1991 at 2:00 PM, why they should not be adjudged in contempt, and/or ordered to pay sanctions.

Dated at Providence, Rhode Island, this 3rd day of July, 1991.

Arthur N. Votolato, Jr.
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x

In re: :

CUMBERLAND INVESTMENT CORPORATION : BK No. 89-11051
Chapter 11
Debtor :

- - - - - - - - - - - - - - - - -x

ORDER

Heard on September 17, 1991 on the Court's Order to Show Cause why Harold Chorney and Gerald Aubin[1] should not be adjudged in contempt and sanctioned for their continuous, deliberate, and unjustified interference with the orderly progress of this bankruptcy case.

In prior proceedings we have found that Chorney has, inter alia, filed frivolous pleadings, willfully interfered with and obstructed the administration of the case, and generally and in bad faith abused the bankruptcy process, causing the estate and its creditors significant economic harm. See In re Cumberland Investment Corp., BK No. 89-11051, slip op. at 1-2 (Bankr. D.R.I. July 3, 1991). Our July 3, 1991 order, which precipitated the instant show cause hearing, clearly expressed the Court's exasperation with Mr. Chorney's conduct.

---

[1] Because the evidence presented at the September 17, 1991 hearing does not support a finding of contempt as to Gerald Aubin, we do not enter an order against him at this time. This is not to say that Mr. Aubin's pre and post-petition conduct (in concert with Chorney) does not deserve sanctions. Our ruling here only reflects the lack of such evidence at the September 17, 1991 hearing.



AO 72A
(Rev. 8/82)

At the show cause hearing, the Trustee, John Cullen, Esq., described what was unfortunately an already too familiar pattern of obstructionist behavior by Mr. Chorney.[2] For example: he continued, post-petition, to advertise fraudulently after both agreeing to and being ordered to desist; to cure a glaring security problem, the Trustee moved for and obtained a Court order to physically eject Chorney from the Debtor's business premises (where he was actually living),[3] after repeated broken promises to vacate;[4] CIC records were allegedly concealed and/or destroyed; coin and other inventory values were grossly and fraudulently overstated to the Court, the Trustee, and to creditors; many frivolous pleadings were filed and extensively litigated, with the intent and effect of impeding the administration of an estate already left in shambles by Chorney; information concerning the identity of redemption coin holders was wrongfully withheld on the baseless

[2] As the result of the many pleadings and ensuing hearings both during and after the debtor-in-possession period, the Court was already acquainted with much of what the Trustee had to say, and we find his testimony to be accurate, but by no means all-inclusive of Chorney's legal and ethical transgressions. A more complete recital of Chorney's misbehavior throughout this case is chronicled in the case docket, annexed as Appendix A.

[3] Chorney's apartment was literally surrounded by inventory, allowing a real-life "fox-guarding-the-chicken-coup" scenario. His bed was literally within inches of the vault and its contents.

[4] The Court order was ignored, however, and the Trustee ended up, instead, moving the assets to another location, at a cost to the estate of approximately $95,000.

ground of "confidentiality," even after disclosure was ordered by the Court, and so on.

The most damaging consequence of Chorney's incomprehensible behavior, however, is the incredible amount of needless expense that has been heaped upon the estate, and ultimately, of course, upon the creditors. The Trustee's and the Examiner's duties (and their fees and expenses) have been increased; secured creditors, long-delayed in exercising their rights, have seen the interest part of their claims escalate; and the likelihood of a meaningful distribution to hundreds of unsecured creditors and redemption coin holders has been practically eliminated. All of this waste has been caused unnecessarily by Harold Chorney.

The time records submitted by the Trustee, the Examiner, and Eastland Bank indicate that fees and expenses directly attributable only to the unnecessary litigation and/or extra-judicial work generated by Mr. Chorney, as of September 1991, total $381,463, broken down as follows: Trustee - $19,461.50;[5] Counsel to Trustee and Examiner - $20,905; Examiner - $250,000; Eastland Bank - $90,844. Based upon the entire record, which need not be

[5] Although expense summaries submitted to the Court indicate the amount of $19,713, our compilation of the entries submitted totals $19,461.50.

recited here,[6] we adjudge Harold Chorney to be in continuous, willful contempt, and order him to pay $200,000 to the Trustee, as partial reimbursement for the deliberate post-petition damage he has done to creditors. Allowing Chorney the benefit of any possible doubt, the above-ordered sanction is a low-end estimate of the financial harm he has caused, and will not even begin to compensate creditors for behavior which seems designed by Chorney to bring everybody[7] down with him, including former customers upon whom he had already inflicted great pre-petition financial harm.

Finally, our actions herein are purposefully crafted to be compensatory and not punitive in nature, and in that regard feel that we have ruled conservatively, and mindful of the District Court's recent discussion of the parameters of Bankruptcy Court authority in the areas of sanctions and civil contempt, in In re Microbiological Sciences, Inc., C.A. No. 91-0341 P, slip op. at 5 (D.R.I. October 8, 1991). See In re Power Recovery Systems, Inc., 950 F.2d 798, 802-03 (1st Cir. 1991) (bankruptcy courts clearly have civil contempt authority to compensate for losses sustained or to coerce compliance with court orders); see also In re Magwood,

---

[6] For the details of Mr. Chorney's persistent efforts to stonewall these proceedings, see Appendix A.

[7] Ironically it is the professionals in the case, against whom Mr. Chorney exhibits his most vehement hostility, who will ultimately benefit the most, financially, from his conduct.

785 F.2d 1077, 1081 (D.C. Cir. 1986); In re Kave, 760 F.2d 343, 351 (1st Cir. 1985).

Enter Judgment consistent with this opinion.

Dated at Providence, Rhode Island, this 2nd day of July, 1992.

Arthur N. Votolato
U.S. Bankruptcy Judge

[NOT FOR PUBLICATION]

# United States Court of Appeals
## For the First Circuit

No. 93-1094

HAROLD F. CHORNEY,

Appellant,

v.

MICHAEL WEINGARTEN, ET AL.,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Breyer, Chief Judge,
Selya and Boudin, Circuit Judges.

Harold F. Chorney on brief pro se.
Edward J. Bertozzi, Jr. and Edwards & Angell, on brief for appellee John F. Cullen, Trustee.

September 23, 1993

Per Curiam. Harold F. Chorney challenges the district court's affirmance of a bankruptcy court order of July 2, 1992, finding him in civil contempt for a "continuous, deliberate, and unjustified interference with the orderly progress of this bankruptcy case," and ordering him to pay $200,000 compensation to the trustee. We affirm.[1]

The bankruptcy proceeding from which the instant appeal arises has a long and tangled history. The docket entries alone consume almost 79 pages as of the date of the contempt order challenged here. On this appeal we have been provided with a partial record consisting primarily of select materials generated in 1991 and 1992. The following background facts are culled from three earlier published opinions of the courts below. In re Cumberland Inv. Corp., 116 B.R. 353 (Bankr. D.R.I. 1990); In re Cumberland Inv. Corp., 118 B.R. 3, 4 (Bankr. D.R.I. 1990); In re Cumberland Inv. Corp., 133 B.R. 275 (D. R. I. 1991).

Debtor, Cumberland Investment Corporation ("CIC"), a wholly owned Rhode Island subsidiary of a Canadian corporation, Wescap Enterprises, Ltd., was in the business of buying and selling numismatic coins and stamps. Chorney was a principal

---

1. Chorney's notice of appeal refers to the district court's order of January 8, 1993 in the singular. There were two orders entered that day, one dismissing the appeal on the merits, the other dismissing a motion for reconsideration based on "new evidence." The issues designated show that only the first order is contested.

of CIC and chief executive officer of Wescap. Eastland Bank was the major secured creditor.

In November, 1989, Eastland and two other creditors petitioned CIC into bankruptcy. About a month later, CIC converted the Chapter 7 involuntary petition into a voluntary Chapter 11 proceeding. Judge Votolato initially denied an Eastland motion for appointment of a Chapter 11 trustee, instead authorizing appointment of an examiner. Pending the outcome of the examiner's investigation, CIC was restrained from selling any coins without court approval.

There ensued seven months of investigation, a series of five reports from the examiner, and at least 11 days of contested hearings and motions by both sides. On the basis of the evidence thus generated, which reflected a "pervasive, broad course of debtor misconduct" and the debtor's "repeated failure to respond adequately to an overwhelming amount of negative evidence," the judge reversed course. <u>In re Cumberland Inv. Corp.</u>, 118 B.R. at 4-5, 6. He granted a renewed motion for appointment of a trustee, expressing regret that he had earlier denied it.

The court simultaneously ordered the immediate discharge of all CIC employees and three principals, including Chorney. <u>In re Cumberland Inv. Corp.</u>, 118 B.R. at 7-8. Among the misdeeds leading to the discharges, the court found that Chorney and his agents had purposely delayed the bankruptcy

process through shifting misrepresentations about corporate assets, unauthorized and transparently fraudulent business operations, and circumvention of the court's injunction against coin sales. In re Cumberland Inv. Corp., 118 B.R. at 4-7.

Shortly before the decision to appoint a trustee, the court had also held hearings over a five-day period on a CIC motion to strike one of the examiner's reports. In that motion, Chorney had alleged examiner bias, conflict of interest, slander, a conspiracy between the examiner and Eastland to misrepresent CIC's affairs, and inventory switches by Eastland. From the evidence presented there, the court questioned the debtor's good faith, concluding that Chorney's allegations were "totally unsupportable," "fabricated," and "out of touch with reality." In re Cumberland Inv. Corp., 116 B.R. at 354. The district court affirmed both orders, finding the bankruptcy judge's analysis "well supported" by the evidence. In re Cumberland Inv. Corp., 133 B.R. at 279, 280.

In the nine months following the trustee's appointment, the bankruptcy court docket sheet shows 234 entries. Among them are a variety of motions brought by the trustee, examiner, and Eastland seeking orders directing Chorney to cooperate or to refrain from interference with the bankruptcy process.

The proceedings immediately precipitating this appeal began on May 21, 1991, when Chorney moved to adjudge the

examiner in contempt. The sole basis for this motion was an allegation that the examiner had failed to use his "best efforts" to obtain agreement among the parties on a method for sale of assets as required by an earlier court order. A hearing was held and testimony taken which showed the motion to be unfounded and wholly frivolous.

On July 3, 1991, in an order dismissing the examiner contempt motion, Judge Votolato observed that over the course of the bankruptcy proceedings Chorney had "deliberately and continuously acted in bad faith to obstruct and to hinder the efficient administration of the estate." He sua sponte ordered Chorney to show cause why he should not be adjudged in contempt for his "wilful interference with the orderly and economic administration of this estate and [his] unjustified waste of the time of this Court and of numerous parties."[2]

A hearing on the show cause order was held on September 17, 1991. Testimony at that hearing spans 80 transcript pages. Judge Votolato continued the matter without a finding in the hope that a change in Chorney's behavior or attitude might warrant further consideration. After a status

2. The order also barred Chorney from further participation or intervention in judicial proceedings relating to the disposition of the estate, except on the same basis as a general creditor.

conference on June 18, 1992 revealed no change,[3] the court issued the contempt order appealed here. In addition to the entire record as reflected in the docket entries, the court relied on the trustee's summary of recent events at the show cause hearing.

> [T]he Trustee, John Cullen, Esq., described what was unfortunately an already too familiar pattern of obstructionist behavior by Mr. Chorney [footnote omitted]. For example: he continued, post-petition, to advertise fraudulently after both agreeing to and being ordered to desist; to cure a glaring security problem, the Trustee moved for and obtained a Court order to physically eject Chorney from the Debtor's business premises (where he was actually living,[*] after repeated broken promises to vacate;[**] CIC records were allegedly concealed and/or destroyed; coin and other inventory values were grossly and fraudulently overstated to the

3. At the status conference the judge learned that in the intervening months Chorney, through Wescap, filed a state court lawsuit reciting the same alleged coin switches by Eastland which the bankruptcy court had earlier determined to be a fabricated charge. The suit was removed to federal court and Eastland advised that it was preparing a motion to dismiss the suit on collateral estoppel grounds. Hearing of June 18, 1992, Tr. at 2-4. Further, liquidation of the estate had been forced to a halt due to a pending criminal investigation into Chorney's conduct. Tr. at 6-8.

During the same period Chorney also took four appeals to the district court from bankruptcy orders. All four were dismissed with prejudice on the merits. Cumberland Inv. Corp., Nos. 91-0594, 91-0595, 91-0596, 91-0604, slip op. (D. R. I., June 5, 1992). Chorney then attempted to further appeal three of the orders to this court, which dismissed them as improperly taken from interlocutory orders. Chorney v. Eastland Bank, Nos. 92-1780, 81, 82, slip. op. (1st Cir. Feb. 5, 1993).

Court, the Trustee, and to creditors; many frivolous pleadings were filed and extensively litigated, with the intent and effect of impeding the administration of an estate already left in shambles by Chorney; information concerning the identity of redemption coin holders was wrongfully withheld on the baseless ground of 'confidentiality,' even after disclosure was ordered by the Court, and so on.

The most damaging consequence of Chorney's incomprehensible behavior, however, is the incredible amount of needless expense that has been heaped upon the estate, and ultimately, of course, upon the creditors. The Trustee's and Examiner's duties (and their fees and expenses) have been increased; secured creditors, long-delayed in exercising their rights, have seen the interest part of their claims escalate; and the likelihood of a meaningful distribution to hundreds of unsecured creditors and redemption coin holders has been practically eliminated. All of this waste has been caused unnecessarily by Harold Chorney.

---

* Chorney's apartment was literally surrounded by inventory, allowing a real-life "fox-guarding-the-chicken-coup" scenario. His bed was literally within inches of the vault and its contents.

** The Court order was ignored, however, and the Trustee ended up, instead, moving the assets to another location, at a cost to the estate of approximately $95,000.

<u>In re Cumberland Inv. Corp.</u>, No. 89-11051, slip op. at 2-3 (Bankr. D.R.I. July 2, 1992).

On the basis of time records submitted by the trustee, the examiner and Eastland Bank, showing "expenses directly attributable to <u>unnecessary</u> litigation and/or extra judicial

work generated by Mr. Chorney," the court ordered Chorney to pay $200,000 to the trustee as "partial reimbursement for the deliberate post-petition damage he has done to creditors." In re Cumberland Inv. Corp., No. 89-11051, slip op. at 4. The court said that its order was "purposefully crafted to be compensatory and not punitive in nature." Id. at 4.

Chorney's brief here denies the accuracy of the judge's factual conclusions and argues that he is the victim of retaliation for his criticisms of improprieties by the judge, trustee and examiner. In support of his denials and blame shifting, however, he points only to previous appellate briefs in this court and elsewhere which recite the same conclusions, and to selected excerpts from the record. We have read the briefs and the record references as liberally as possible in his favor, given his pro se status. However, the material he offers barely provides even a glancing basis for his factual denials and no concrete support for his accusations. The selectivity of his citations, incoherent or indistinct purpose for many record references, and his repeated blurring of temporally distinct events, only serves to confuse and obfuscate the issues.[4]

4. We also reviewed the videotape quoted in Chorney's brief, and conditionally accepted by this court on Chorney's motion to supplement the record. We are unable to determine from the scanty information given whether the tape was in evidence below and might thus be a proper part of this record. In any event, the tape does not support Chorney's assignments of error.

"We must uphold the factual findings of the bankruptcy court, as affirmed by the district court, unless they are clearly erroneous." In re Power Recovery Sys., Inc., 950 F.2d 798 (1st Cir. 1991). Based on a full review of the record before us, including transcripts of the hearings of May 7, 1991, May 22, 1991, September 17, 1991, June 18, 1992, and July 17, 1992, it clearly appears that the bankruptcy court had more than ample evidence to support the contempt order.

We also reject Chorney's procedural challenges to the hearing and order. While Chorney claims now that he was never notified of the order, nor given time to prepare a defense, the record shows that he received ample notice and specification of the issues in the court's Show Cause order of July 3, 1991. That order fully complied with Bankruptcy Rule 9020(b). Chorney had more than two months to prepare a defense, was present without objection at the September 17, 1991 hearing, represented by counsel, testified, and was well prepared on all the issues raised.

Equally meritless is Chorney's claim that he was unconstitutionally deprived of a right to a jury trial. Absent an express statute, there is no right to a jury trial in civil contempt proceedings. Shillitani v. United States, 384 U.S. 364 (1966); cf. United States v. Pina, 844 F.2d 1, 11-12 (1st Cir. 1988) (even in some classes of criminal contempt cases there is no right to a jury). And while it may not always be

easy to distinguish between criminal and civil contempt, there is no difficulty where, as here, the ultimate object is to compensate the injured party. See generally, In re Power Recovery Sys., Inc., 950 F.2d at 802-03 (defining criminal and civil contempt sanctions); Charles A. Wright et. al., 11 Federal Practice and Procedure § 2960 at nn. 59-60 (1973 & supp. 1992) (same).

At least two of the other issues raised in Chorney's brief merely reiterate arguments he raised in earlier appeals, which were dismissed by this court as improperly taken from interlocutory orders.[5] Chorney's remaining arguments are frivolous.

For the reasons stated, the judgment of the district court is affirmed. Appellee's request for sanctions is denied without prejudice to renewal of the request in the future should events so warrant.

---

5. See supra note 3. Chorney reiterates that he was denied due process when Judge Votolato both recused himself from hearing an Eastland motion to hold Chorney in contempt and ruled that there was no right to a jury trial on the Eastland motion. The Eastland motion was transferred to another judge, and eventually withdrawn. If by reasserting this argument Chorney is suggesting that Judge Votolato should have recused himself from the instant contempt hearing, the argument fails for want of any facts creating a reasonable doubt as to the judge's impartiality. United States v. Lopez, 944 F.2d 33, 327 (1st Cir. 1991). Chorney also attempts to reargue the contentions underlying his interlocutory appeal from denial of his motion to hold the examiner in contempt.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - -x

In re: :

CUMBERLAND INVESTMENT CORPORATION : BK No. 89-11051
Debtor Chapter 7

- - - - - - - - - - - - - - - - - -x

**ORDERS: (1) GRANTING MOTION TO STRIKE AND (2) IMPOSING ADDITIONAL SANCTION**

Before the Court is the Motion of Harold Chorney "to clarify the class action award from the lawsuit against Christy's Public Auction and require the Chapter 7 Trustee, Jason Monzack, Esq., to provide a complete and detailed accounting of estate assets." Chorney has also served the Trustee with a "Second Request for Admissions." In response, the Trustee has filed two motions to strike - one seeking to strike the motion (Doc. #794), and the other seeking to strike the request for admissions (Doc. #870). Because Chorney lacks standing to bring the instant motions, and because much of the relief he requests has been previously denied here and on appeal all the way to the United States Supreme Court, the Trustee's Motions to Strike are GRANTED and Chorney's motion and request for admissions are stricken.

**DISCUSSION**

Chorney's hyperactivity and ludicrous conduct throughout this case is marked by his incessant acts of bad faith and abuse

of the system from the inception of this bankruptcy in 1989. Very early on, it was determined that "Chorney has deliberately and continuously acted in bad faith to obstruct and to hinder the efficient administration of the estate, which action has been very damaging, expense-wise, to the estate and its creditors." *In re Cumberland Investment Corp.*, BK No. 89-11051, slip op. at 1-2 (Bankr. D.R.I. July 3, 1991). As a result, Chorney was prohibited from intervening or "otherwise participat[ing] in proceedings relating to sales or other disposition of estate assets." *Id.* In addition, in 1992 a civil contempt sanction was imposed in the amount in of $200,000 against Chorney on account of his bad faith and abuse of the bankruptcy process. *In re Cumberland Investment Corp.*, BK No. 89-11051, slip op. at 1-2 (Bankr. D.R.I. July 2, 1992), *aff'd*, 7 F.3d 218 (1st Cir. 1993), *cert denied*, 510 U.S. 1200 (1994). This sanction was calculated to reimburse the estate for just a part of the unnecessary expense occasioned by Chorney's aberrant behavior. *Id.* at 4. Obviously undeterred by this sanction, Chorney continues, some twelve years later, to file frivolous

pleadings which add expense and delay in the closing of this 1989 case.

By filing the instant motion and requests for admissions, Chorney has directly violated the 1991 injunction. Additionally, in January 2002, Chorney filed a similar request seeking an accounting of assets, which was denied on March 14, 2002, based on lack of standing and the 1991 injunction order. See Doc. #738. That decision was sustained on appeal. See *In re Cumberland Inv. Corp.*, 2003 WL 214357 (1st Cir.), *cert. denied*, 123 S. Ct. 579 (2003). Finally, in an effort to leave no stone unturned, I asked the United States Trustee to review the Trustee's Accounting to date to determine whether any of Chorney's allegations have merit. The United States Trustee responded in late August 2004 stating that she was satisfied with the Trustee's Accounting. *See* Doc. #899.

Accordingly, because these issues have been long ago decided against Mr. Chorney, because he lacks standing, and because he is enjoined from participating in this case regarding the disposition of assets, the Trustee's request to strike the instant motion and request for admissions are GRANTED.

BK No. 89-11051

Also, because the instant filings are frivolous and are hindering the Trustee in performing his duty to conclude this case, it is further ordered that, effective immediately, the Clerk of Court shall decline to accept any filings from Harold Chorney, unless such filing has first been presented to Chambers and is specifically authorized by the Court for filing.[1] *See* 11 U.S.C. § 105(a); *see also*, *Mayfield v. Collins*, 918 F.2d 560 (5th Cir. 1990).

Dated at Providence, Rhode Island, this 3rd day of November, 2004.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 11/3/04

[1] I considered imposing additional monetary sanctions, however, the $200,000 contempt sanction remains unpaid and appears to have little deterrent effect on Chorney.